## FOLTZ v. MOORE McCORMACK LINES, Inc.

No. 200, Docket 21930.

United States Court of Appeals
Second Circuit.

Argued March 14, 1951.

Decided May 28, 1951.

538

Cuddihy & Von der Lieth, New York City, John J. Von der Lieth, New York City, for plaintiff-appellant.

Newell A. Clapp, Acting Asst. Atty. Gen.

Irving H. Saypol, U. S. Atty., New York City, Leavenworth Colby, Special Asst. to the Atty. Gen., Benjamin H. Berman, New York City, for Department of Justice.

Before SWAN, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

Invoking the diversity jurisdiction of the court, the appellant sued the appellee for maliciously giving to the Federal Bureau of Investigation false, derogatory statements of and about him which caused the loss to him of a federal office to which he had been appointed. He has appealed from an order dismissing his amended complaint on motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for failure to state a cause of action.

The complaint, as amended, alleged that on April 22, 1949, the appellant had been appointed to serve with the Economic Cooperation Administration in the position of Assistant Economic Commissioner, Deputy Port Superintendent, at the Special Mission in Pusan, Korea, at an annual salary plus a maintenance allowance; that the appointment was upon the condition that he should be investigated by the Federal Bureau of Investigation in accordance with the provisions Title 1, § 110(c) of Public Law 472[1] of the 80th Congress, Second Session, and that a favorable report should be made by that agency; that he went to Korea with his family and there assumed the duties of the office to which he had been appointed; upon information and belief that the agency while conducting its investigation subsequent to April 22, 1949, in good faith requested information from the appellee concerning the appellant's record while employed by the appellee during the time between 1939 and 1946; that the appellee, in response to such request, maliciously published to the agency false, misleading and defamatory statements with knowledge of their falsity, and in such a manner as to cause the agency reasonably to believe that they were true; that the publication of the false statements was made by furnishing the personnel file of the appellant to the agency "and by oral statement made by one Captain Edward Barrett, an employee acting for and on behalf of the defendant, as to matters not contained in said personal file."

It was further alleged that as a result of the foregoing the agency included in its report such defamatory matter and that on October 4, 1949, the appellant was relieved of the office "for the reason that the report of the Federal Bureau concerning the plaintiff was unsatisfactory."

Because the contractual relationship of the appellee to the United States made the latter liable for any damages which the appellant may recover, the government assumed the defense of the suit and moved to dismiss the amended complaint, the grounds relied on and sustained by the court being, "that (1) the statements alleged to have been made by the defendant to the Federal

1. 22 U.S.C.A. § 1508(c), 62 Stat. 142.

Bureau of Investigation in the course of an investigation of the plaintiff by that agency are privileged, and (2) the amended complaint does not set forth that the alleged defamatory statements made by Captain Edward Barrett were made by him within the scope of his authority as an employee of defendant."

Taking up these questions in reverse order, we note that the failure to allege that Captain Edward Barrett was acting within the scope of his authority is a point well taken. Of course the appellee would not otherwise be liable for what he said. But that was an insufficient ground for dismissing the entire complaint since it does not touch that part of it which alleges the publication of the file record to the F. B. I. Moreover, there is a technical objection to the complaint as it does not, as the appellant now admits, comply with the requirement of Rule 10(b), F.R.C.P. that each averment of claim must be separately stated in a numbered paragraph. But these defects, certainly the second, should be remediable by amendment and, as we feel bound to reverse the judgment, we will let them be dealt with in whatever way may be sought and permitted, upon the remand.

It is true that in actions for libel or slander the false and defamatory matter should be pleaded in *haec verba,* while here it was only as follows:

"(a) That plaintiff was personally responsible for the cracking of the hull of the SS Joseph Hooker, a troopship, while at sea and carrying troops, because of improper placing of ballast in the ship's hold prior to sailing from France in December of 1945.

(b) That plaintiff had been tried and found guilty of drunkenness by a military tribunal in 1946 in Honolulu, Territory of Hawaii.

(c) That plaintiff had misappropriated a revolver while Master of the SS James Pettigrew.

(d) That plaintiff had misappropriated the sum of one thousand dollars while in the employ of the defendant."

We will assume that if this were but an action for slander or libel such allegations would be insufficient, as decided in Simpson v. Oil Transfer Corp., D.C. N.D.N.Y., 75 F.Supp. 819, 822, a suit of this nature. However, the underlying reason for the rule that the exact words must be pleaded in a suit for slander or libel is not pertinent in one like this. They are there necessary to enable the court to decide the issues of whether the words as used apply to the plaintiff and tend to degrade him in the eyes of the community, while here the issue is whether false information allegedly given by the appellee caused the appellant to lose the position to which he had been appointed. The gist of this action is maliciously depriving the appellant of a gainful position in the employ of the government, and we think there was a sufficient compliance with Rule 8, F.R.C.P., to state such a cause of action provided the communications were not absolutely privileged, to which objection we will now turn.

At the beginning a purely technical point which has been raised should be noticed. It is argued, quite properly, that privilege is a special defense which must not only be pleaded but proved and that a dismissal of the complaint on that ground on motion before answer is premature. Even so, there would be no point in reversing upon such a technicality when the question of privilege is, as here, sufficiently presented so that it may be decided on its merits. The complaint itself shows that the communications were all made to the F. B. I. in response to its request and this adequately raises the issue whether, even though they were made maliciously with knowledge that they were false and with intent to deprive the appellant of his employment, they were not actionable because made to a federal agency conducting an investigation required by law.

If New York laws governs, and see Grant v. Readers Digest Ass'n, 2 Cir., 151 F.2d 733, the privilege is not absolute but so qualified that it would be non-existent if malice were shown as here alleged. Andrews v. Gardiner, 224 N.Y. 440, 121 N.E. 341, 2 A.L.R. 1371; Pecue v. West, 233 N.Y. 316, 135 N.E. 515. The appellee ar-

540

gues with much force, however, that whatever privilege may accompany publications to the F. B. I. when it is conducting investigations required by statute is of such importance to the administration of federal laws that it should be determined with the uniformity which can be obtained only by making federal law govern. Cf. In re Neagle, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55; Mitchell v. Flintkote Co., 2 Cir., 185 F.2d 1008, 1011. We do not, however, now find it necessary to decide this question, for we think that the same result is required by the application of either law.

We may lay aside cases like Totten v. United States, 92 U.S. 105, 23 L.Ed. 605, and Vogel v. Grauz, 110 U.S. 311, 48 S.Ct. 12, 28 L.Ed. 158, which deal with the testimonial privilege of a party to prevent the disclosure of confidential communications. Much closer to indicating absolute privilege here is In re Quarles and Butler, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080, where there is a dictum that a private citizen is immune from an action for libel or slander for giving information to a United States Marshal, or his deputy, of a violation of the laws of the United States. But this case does not necessarily stand for the proposition that the privilege is absolute regardless of the bona fides of the informer, and we read to the contrary, White v. Nicholls, 3 How. 266, 44 U.S. 266, 11 L.Ed. 591, which was not expressly, and we think not impliedly, overruled by In re Quarles and Butler. In the White case the suit was brought on false and defamatory statements concerning the plaintiff contained in letters which had been sent to the President and to the Secretary of the Treasury seeking to obtain the removal of the plaintiff from a federal office. It was held that malice made the letters actionable. Cf. Previn v. Tenacre, Inc., 3 Cir., 70 F.2d 389, certiorari denied 291 U.S. 677, 54 S.Ct. 528, 78 L.Ed. 1065; Washington Times Co. v. Bonner, 66 App.D.C. 280, 86 F.2d 836, 840, 110 A.L.R. 393. We think that communications to the F. B. I. are in the same category.

Nor do we think that the rationale of the White case need be made, upon grounds of public policy, to yield to any paramount public need for keeping open sources of information to the F. B. I. to such an extent that all communications to it, however false and malicious, are absolutely privileged. The qualification of the privilege here upheld, does not, of course, affect any testimonial privilege which may be invoked, such as the right of the government to refuse to reveal the identity of the informer, nor does it impair the immunity of F. B. I. agents from suit for matter contained in their reports. United States, to use of Parravicino v. Brunswick, 63 App.D.C. 65, 69 F.2d 383. Where information is obtainable on which to base suits against informers having but a qualified privilege, there is, of course, some deterrent to their willingness to act without reserve in the danger that some jury might find malice, contrary to the fact. Cf. Gregoire v. Biddle, 2 Cir., 177 F.2d 579, 581. On the other hand it may be even more desirable to allow some restraint in order to reduce the waste of requiring the F. B. I. to investigate and deal as best it can with false charges maliciously made.

Judgment reversed and cause remanded for further proceedings consistent herewith.