**Anthony HERBERT, Plaintiff,**

v.

**Barry LANDO, Mike Wallace, Columbia Broadcasting System, Inc., Defendants.**

**No. 74 Civ. 434–CSH.**

United States District Court, S.D. New York.

Feb. 27, 1985.

Cohn, Glickstein, Lurie, Ostrin, Lubell & Lubell, New York City, for plaintiff; Jonathan W. Lubell, New York City, of counsel.

Coudert Brothers, New York City, for defendants CBS, Inc. and Mike Wallace; Pamela G. Ostrager, New York City, Selene E. Mize, of counsel.

Green & Hillman, New York City, for defendant Barry Lando; Richard G. Green, Adria S. Hillman, New York City, of counsel.

Ronald E. Guttman, New York City, for CBS, Inc.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this action for defamation brought by a public figure plaintiff and arising out of a television program and subsequent magazine article, defendants Lando, Wallace, and Columbia Broadcasting System, Inc. ("CBS") moved for summary judgment dismissing the complaint. This Court granted the motion in part and denied it in part, thereby requiring trial on two particular statements ascribed to defendants. That decision is reported at 596 F.Supp. 1178 (S.D.N.Y.1984), with which familiarity is assumed.[1]

Plaintiff and defendants now cross move for reargument pursuant to Civil Rule 3(j) of this Court. Plaintiff asks that the complaint be entirely reinstated. Defendants ask that it be entirely dismissed. Both motions are denied.

Rule 3(j) provides that to succeed on a motion for reargument, the moving party bears the burden of "setting forth concise-

---

1. The Court granted summary judgment to the magazine publisher, Atlantic Monthly Company, and dismissed the complaint as to it.

ly the matters or controlling decisions which counsel believes the court has overlooked." Implicit in that obligation is the conclusion that if such "matters or controlling decisions" are not demonstrated, the motion fails.

■ As for plaintiff, his further extensive briefs seek to reargue, without making the requisite showing, a considerable number of the adverse determinations contained in the Court's prior opinion. Only one argument warrants consideration here. That is the contention appearing in plaintiff's Main Brief on Reargument at 4:

> "Plaintiff's position throughout this litigation, also advanced in his opposing papers, has been that he was defamed by the program and article as a whole and not simply by isolated statements removed from that overall defamatory context. . . . By failing to consider plaintiff's contentions regarding the defamations caused by the program and article as a whole, the court disregarded controlling precedent which holds that libel actions may be grounded upon the defamatory import of the publication as a whole."

Plaintiff supports this indictment by citing the string of cases set forth in the margin.[2] The fault in the Court's prior opinion, as perceived by plaintiff, is that the Court "erroneously treated plaintiff's position regarding the defamations at issue as restricted to eleven statements," *id.* at 2. That is a reference to eleven particular statements which, in his brief opposing summary judgment, plaintiff culled from the television program and the article and alleged were defamatory, false, and published with knowledge of falsity. The Court's prior opinion considered each of those eleven statements with respect to whether or not they were "actionable,"

that is, "susceptible of imposing liability at the hands of a reasonable jury properly instructed on the law." 596 F.Supp. at 1198.

No district judge particularly enjoys being told that he has "disregarded controlling precedent." To avoid that professional embarrassment, the judge relies (a) upon the briefs of counsel, and (b) his own knowledge of the law, as supplemented by independent research. The judge reasonably relies upon counsel to call to his attention "controlling precedent" bearing upon the issues at hand. These reflections are prompted by the fact that none of the nine cases plaintiff now identifies as controlling precedents which this Court disregarded was cited in plaintiff's 282-page brief in opposition to summary judgment, which cited 106 other cases. Nor was the argument presently put forward included in that brief, although the defendants, in their motion for summary judgment following extensive discovery, launched a broad scale attack upon the viability of plaintiff's claims.

If the plaintiff's new argument were sound, and the authorities now cited for the first time apposite, his motion for reargument would pose a question of substance, notwithstanding the Court's perhaps understandably puzzled state at not having been told about them before. In fact, however, the argument is not sound, and the cases do not focus upon the analysis pursued in the Court's prior opinion. In consequence, what emerges is not a puzzling case of advocate's amnesia, but an unsuccessful effort to recast claims which discovery has demonstrated are not actionable.

The cases now cited by plaintiff stand essentially for the proposition that whether or not statements are capable of a defama-

---

**2.** *Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.*, 708 F.2d 944 (5th Cir.1983); *Street v. NBC*, 645 F.2d 1227 (6th Cir.1981), *cert. dismissed*, 454 U.S. 1095, 102 S.Ct. 667, 70 L.Ed.2d 636 (1981); *Hoffman v. Washington Post Co.*, 433 F.Supp. 600 (D.D.C. 1977), *aff'd*, 578 F.2d 442 (D.C.Cir.1978); *Afro-American Publishing Co. v. Jaffe*, 366 F.2d 649 (D.C.Cir.1966) (*en banc*); *Sellers v. Time, Inc.*, 423 F.2d 887 (3rd Cir.), *cert. denied*, 400 U.S. 830, 91 S.Ct. 61, 27 L.Ed.2d 61 (1970); *Mulvihill v. Forbes*, 9 Med.L.Rptr. 1137 (D.N.J.1982); *Wilder v. Johnson Publishing Co.*, 551 F.Supp. 622 (E.D.Va.1982); *Green v. Northern Publishing Co., Inc.*, 8 Med.L.Rptr. 2515 (Alaska Sup.Ct. 1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983); *Clark v. Pearson*, 248 F.Supp. 188 (D.D.C.1965).

tory interpretation often turns upon the context in which they appear. It is quite true, as plaintiff argues on the present motion, that "libel actions may be grounded upon the defamatory import of the publication as a whole." The cases cited by plaintiff, fn. 1 *supra*, illustrate the working of that rule.

*Golden Bear Distributing Systems of Texas v. Chase Revel, Inc.* did not involve a public figure plaintiff. Hence the measure of liability was negligence, not malice, as in the case at bar. The holding upon which plaintiff relies relates to the initial inquiry of whether the article in question contained an actionable defamatory meaning. The purported quotation from the case (plaintiff's Main Brief on Reargument at 5) does not in fact appear in the Fifth Circuit's opinion; what does appear is this:

> "The evidence presented at trial suggests that all the individual statements in the magazine article concerning Golden Bear of California's fraudulent activities and Golden Bear of Texas' representations to potential investors were true. The basis of the libel lies in the juxtaposition of truthful statements about one company with truthful statements about the illegal operations of an independent company of the same name located in a different state."

708 F.2d at 948.

*Street v. NBC* involved a suit by the prosecutrix and main witness in the famous Scottsboro rape trials. She sued NBC for defamation, NBC having televised a play dramatizing the role of the presiding judge at one of the Scottsboro trials. The plaintiff was held still to be a "public figure." Her claim was based on nine specific scenes in the play, each of which plaintiff contended contained false and defamatory statements of fact which she specifically identified. 645 F.2d at 1230–32. Having examined those statements in detail, the Sixth Circuit predictably concluded that "[t]he facts recited above illustrate that the play does cast plaintiff in an extremely derogatory light. She is portrayed as a perjurer, a woman of bad character, a woman who falsely accused the Scottsboro boys of rape knowing that the result would likely be the electric chair." 645 F.2d at 1232. That recitation led to the equally unsurprising conclusion: "Taken as a whole, the play conveys a defamatory image of the plaintiff." *Ibid.* Having resolved in plaintiff's favor the issue of whether the play was defamatory, the Sixth Circuit then turned to the separate question of whether plaintiff had adduced evidence sufficient to support a jury verdict of malice. The court answered that question in the negative, and affirmed the district court's directed verdict for NBC:

> "So long as there is no evidence of bad faith or conscious or extreme disregard of the truth, the speaker in such a situation does not violate the malice standard. His version of history may be wrong, but the law does not punish him for being a bad historian.
>
> "The malice standard is flexible and encourages diverse political opinions and robust debate about social issues. It tolerates silly arguments and strange ways of yoking facts together in unusual patterns."

645 F.2d at 1237.

*Hoffman v. The Washington Post Company* considered whether five particular statements in a newspaper article about plaintiff, a trainer of athletes, were defamatory in respect of the efficacy of dietary supplements sold by plaintiff, a public figure within the limited area of his claimed expertise. Defendant moved for summary judgment. The district court declined to read the five statements "as discrete units, for the challenged publication must be read as a whole. Its content must be considered in its entirety and weighed in connection with its structure, nuances, implications, and connotations." 433 F.Supp. at 602 n. 1. The district judge concluded that the defendants' article "was defamatory because it imputed dishonest conduct to Bob Hoffman and tended to disgrace him and bring him into ridicule." *Id.* at 603. However, summary judgment was granted to defendants, after discovery, because "[t]he record

in this case fails to demonstrate that plaintiff could produce clear and convincing evidence that each defendant acted with actual malice," *id.* at 605.

*Afro-American Publishing Co. v. Jaffe* involved an appeal by defendants after bench trial in a libel action brought by a pharmacist who operated a local drugstore in Washington, D.C. Plaintiff, who was white, served a neighborhood where 80% of his customers were black. Plaintiff ceased distributing the defendant's newspaper "Afro" because he regarded it as racist and inflammatory. This provoked an editorial in "Afro" critical of plaintiff, prompting a suit for invasion of privacy and defamation. Plaintiff recovered compensatory and punitive damages on both counts. The District of Columbia Circuit, sitting *en banc*, reversed the award for invasion of privacy, 366 F.2d at 654, but affirmed the judgment for compensatory (although not punitive) damages for defamation. The court stated generally that the publication "must be taken as a whole, and in the sense in which it would be understood by the readers to whom it was addressed"; certain "false statements were critical in the total impact of the article. The article contained other items that were true, but in the setting already described these only reinforced the defamatory impression." *Id.* at 655. It is worth noting that the Court of Appeals specifically found that the plaintiff was not a public figure, so that he was not required to prove malice under *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny.

*Sellers v. Time, Inc.*, a diversity action turning upon Pennsylvania law, involved a *Time* magazine article about a businessman-golfer who succeeded in driving a golf ball backwards and into the eye of a golfing partner. The perpetrator of this unintended assault was sued by his golfing partner; he pleaded the defense of assumption of the risk; *Time* regarded the incident as newsworthy and published an article about it. In plaintiff's ensuing suit for libel, defendant moved successfully for summary judgment. The Third Circuit noted plaintiff's contention that various perceived innuendoes "support his contention that the article as a whole portrays him as one for whom business success overrides all concerns for others," 423 F.2d 890, but concluded that the article was not defamatory: "While the article may have caused Sellers great personal annoyance, annoyance alone does not constitute defamation." *Id.* at 891 (citing Pennsylvania cases).

*Mulvihill v. Forbes* is another case in which the motion of the defendant, *Forbes* magazine, for summary judgment was granted. A *Forbes* article discussed "boiler shop" security operations and mentioned plaintiff's name. The Court said: "The issue in the instant case, simply stated, is whether there has actually been a defamation." 9 Med.L.Rptr. at 1138. The district judge accepted plaintiff's argument that "the court should review the article as a whole, and not view the passage which names Mulvihill out of context," but went on to say: "The court does not believe that the article, viewed as a whole, can reasonably be considered to be defamatory." *Id.* at 1140–41.

*Wilder v. Johnson Publishing Co.* also turned only upon the question of whether or not a published article was defamatory, the issue arising within the context of defendant's motion to dismiss the complaint under Rule 12(b)(6) for failure to state a claim. The district court held that one aspect of the article was not defamatory, but that another aspect was, and set the case down for trial in respect of that aspect. No other issues were raised or decided.

*Green v. Northern Publishing* involved an action by a physician appointed by prison authorities to supervise the health of incarcerated individuals. The death of a prisoner in custody excited newspaper attention, culminating in an editorial which reported the termination of the plaintiff physician's services by the prison authorities, and made other comments concerning him. The Alaska Supreme Court reversed a summary judgment in defendant's favor. The opinion deals first with the question of

whether or not the editorial was defamatory of plaintiff, the court concluding that it was 8 Med.L.Rptr. at 2418. Turning to the separate issues present, the Court observed generally: "Defamation defendants have two defenses—truth and privilege." *Ibid.* Citing *New York Times Co. v. Sullivan, supra,* the Alaska Supreme Court refers to "a conditional constitutional privilege for media defendants in defamation suits brought by 'public officials.' The 'condition' was that the privilege applied only if the media defendant had not uttered the defamation with 'actual malice', *i.e.,* with actual knowledge that its utterance was false or with reckless disregard for its truth or falsity." *Ibid.* The Court held that the physician plaintiff should be regarded as a "public official," and that, on the evidence in the record, reasonable jurors could find that at least one statement in the editorial was published with malice.

*Clark v. Pearson,* another case dealing with the issue of defamation, states generally: "An accused publication must be read as a whole. Its content must be considered in its entirety and weighed in connection with its structure, nuances, implications and connotations.... It is not sufficient to take every sentence separately and demonstrate its individual accuracy, detached and wrenched out of its context." 248 F.Supp. at 191. The district judge concluded that the article in question could reasonably be regarded as defamatory, and denied defendant's motion for summary judgment. It is worth nothing, however, that the court also regarded the plaintiff as a private individual, and not a public figure, *id.* at 195, so that the case did not present the question of actual malice.

I have no quarrel with the holdings or the rationales of any of these cases. Nor does this Court's prior opinion depart in any way from their principles.

■ Plaintiff's claim on reargument of judicial disregard of "controlling precedent" itself disregards the three separate issues which arise in a public figure's libel action against the media. "When a public figure sues for defamation, the first

amendment bars recovery unless the defamatory falsehoods were made with knowledge of falsity or with reckless disregard for the truth." *Hotchner v. Castillo-Puche,* 551 F.2d 910, 912 (2d Cir.1977). Thus before a media defendant may be held liable to a public figure plaintiff, the plaintiff must prevail on each of three discrete issues: (1) was the statement defamatory? (2) was the statement false? (3) was the statement published with actual malice? It will be recalled that these are the precise questions, and in that order, submitted by Judge Sofaer to the jury in *Sharon v. Time, Inc.,* 83 Civ. 4660 (ADS). Sharon's complaint was dismissed because, although he prevailed on the first two questions, the jury held against him on the third. The separate and independent nature of these three issues is further emphasized by the fact that the plaintiff's burdens of proof as between them are different: "... there is a significant difference between proof of actual malice and mere proof of falsity," *Bose Corp. v. Consumers Union of U.S., Inc.,* —— U.S. ——, 104 S.Ct. 1949, 1965, 80 L.Ed.2d 502 (1984).

This brings me again to the task I set myself in response to defendants' motion for summary judgment, namely, to consider whether the eleven specific statements identified by plaintiff were "actionable," in the sense of permitting a reasonable jury to answer all three questions in plaintiff's favor. In respect to the nine statements as to which summary judgment was granted, I concluded that a reasonable jury, properly instructed, could not do so.

A reading of the Court's prior opinion makes it plain that the main focus was upon whether or not a jury could find that plaintiff had proved actual malice by that measurably heavier burden of "clear and convincing evidence." In emphasizing that issue, I did not disregard the others. It was the parties themselves, in their motion papers, who concentrated upon the issue of actual malice. It would be an exaggeration to say that the defendants conceded that the program and the article were defamatory; but the argument was not emphasized,

the main debate revolving around the issue of malice. While as an alternative ground for decision I concluded that some of the statements were not defamatory, defendants' motion for summary judgment, to the extent that it was granted, depends primarily upon the Court's conclusions concerning the challenged statements that plaintiff could not prove actual malice at trial. Nothing in plaintiff's motion for reargument causes me to question those conclusions.

Plaintiff complains of the Court's concentration upon the eleven specific statements which plaintiff urged in his brief were defamatory, false, and published with malice. I remain of the view that plaintiff was entitled to no more than that. Fully appreciating plaintiff's contention that "he was defamed by the program as a whole, not simply by particular statements made on the program," Main Brief on Reargument at 2, even those cases which properly consider the publication as a whole in determining defamation *vel non* typically begin their analyses with the particular statements alleged to be false and defamatory. *Street v. NBC, supra,* is illustrative. The nine specific incidents identified by plaintiff as false and defamatory, within the context of the Scottsboro play as a whole, are the functional equivalents of the eleven statements identified by the present plaintiff as false and defamatory within the context of the television program and article.[3]

■ There are policy reasons for requiring specific pleading in cases of this nature. Media discussion of a public figure's conduct enjoys presumptive First Amendment protection. *Small v. ABC,* 10 Med.L.Rptr. 2391, 2392 (N.D.Iowa 1984); *Barger v. Playboy Enterprises, Inc.,* 564 F.Supp. 1151, 1154 (N.D.Cal.1983). In *Franchise*

*Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers,* 542 F.2d 1076, 1082–83 (9th Cir. 1976), the Ninth Circuit stated generally that in cases involving "conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." Because of that principle, the district court in *Small v. ABC, supra,* an action which like the case at bar alleged defamation in a television news program, granted defendants' motion "to require the plaintiff to state in his complaint the exact words broadcast which were defamatory." *Id.* at 2392. Given the constitutional implications of such cases, that is not asking too much of a public figure plaintiff. In the case at bar, defendants made no such motion addressing the sufficiency of the complaint; plaintiff's specifications of "the exact words [broadcast and in the article] which were defamatory" first emerged in his opposition to summary judgment. The inadequacy of general allegations of defamation, divorced from the specific words plaintiff challenges, is all the more apparent in light of the established rule that, on the separate issue of actual malice, an article's "uncomplimentary" or "snide" tone "is no evidence that the article was published with actual malice." *Reliance Insurance Co. v. Barrons',* 442 F.Supp. 1341, 1352 (S.D.N.Y.1977). Judge Leval made the same point more recently in *Westmoreland v. CBS,* 601 F.Supp. 66, 68 (S.D.N.Y. 1984):

"Publishers and reporters do not commit a libel in a public figure case by publishing unfair one-sided attacks. The issue in the libel suit is whether the publisher recklessly or knowingly published false

---

**3.** *Golden Bear Distributing Systems of Texas v. Chase Revel, Inc., supra,* appears at first blush to be different because the Fifth Circuit said at 708 F.2d 948 that "all the individual statements ... were true." But *Golden Bear's* particular facts make any difference more apparent than real. The particular libel of which plaintiff complained lay "in the juxtaposition of truthful statements about one company with truthful

statements about the illegal operations of an independent company of the same name located in a different state." *Ibid.* In other words, by misleading editing the defendant achieved the functional equivalent of a false statement, which plaintiff identified and specifically challenged as defamatory. Plaintiff makes no comparable claim in the case at bar.

material. The fact that a commentary is one sided and sets forth categorical accusations has no tendency to prove that the publisher believed it to be false."

■ First Amendment implications aside, under general principles it is usually held that a defamation plaintiff does not satisfy the requirements of notice pleading unless he specifically alleges the words said to be actionable. *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 699 (8th Cir.1979) ("Nevertheless, the use of *in haec verba* pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings."). The Second Circuit, construing New York law in diversity cases, has reached the same conclusion. *Foltz v. Moore-McCormack Lines*, 189 F.2d 537, 539 (2d Cir.1951) ("It is true that in actions for libel or slander the false and defamatory matter should be pleaded *in haec verba*."), citing and approving *Simpson v. Oil Transfer Corporation*, 75 F.Supp. 819, 822 (N.D.N.Y.1948) ("It has long been held that defamatory words must be set forth in the complaint, if an action is to be based thereon."). For further New York authority, see N.Y. CPLR § 3016(a) (McKinney 1974): "In an action for libel or slander, the particular words complained of shall be set forth in the complaint....";  *Laiken v. American Bank & Trust Company*, 34 A.D.2d 514, 308 N.Y.S.2d 111, 112 (1st Dept.1970) ("The complaint in an action for slander is required to state *in haec verba* the words used. This requirement is strictly enforced and the exact words must be set forth.").[4]

In the light of these authorities, it is useful to review the chronology of the case at bar. Plaintiff's complaint alleged that the program and the article defamed him in several respects. Those allegations were reiterated in plaintiff's motion opposing summary judgment. 596 F.Supp. at 1184. The allegations of the complaint were general and conclusory. They are of doubtful sufficiency under New York law as interpreted by the Second Circuit.[5] But defendants did not test the sufficiency of the pleading by motion. Instead, they joined issue by answer. Pre-trial discovery then began. The boundaries of proper discovery were litigated and eventually resolved by the Supreme Court. 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). During discovery, plaintiff and the individual defendants each testified for days. Other witnesses were deposed. Tens of thousands of pages of testimony were generated. Hundreds of exhibits were produced. Af-

---

**4.** In his reply brief on reargument, plaintiff cites for the first time *Locricchio v. Evening News Association, Inc.*, No. 64729 (Mich.App. entered August 24, 1983), *reh'g. denied* (October 17, 1983), *cert. denied,* — U.S. —, 105 S.Ct. 433, 83 L.Ed.2d 360 (1984). The suit arose out of a series of allegedly defamatory articles published in the Detroit News concerning plaintiffs' activities with regard to the development and operation of an entertainment complex. Defendants interposed interrogatories asking plaintiffs to specifically identify each statement claimed to be defamatory or false. Plaintiffs in their answers did not do so, contending rather that "the entire series of articles, in their entirety" defamed them by presenting "a false portrayal, implication, imputation and/or insinuation" that plaintiffs were, *inter alia,* members of the Mafia. On the basis of that response, defendants moved for summary judgment. The trial court denied summary judgment and the Michigan Court of Appeals affirmed, expressing the view that the pleadings raised "a genuine issue of material fact as to whether the specified articles, read as a whole, carry a defamatory insinuation or inference that plaintiffs are associated with organized crime."

*Locricchio,* while to a degree supportive of plaintiff's position, does not alter the conclusions which I reach in the case at bar. Michigan law, to the extent that it forms the basis for decision, is not applicable here. There is no indication that the plaintiffs were public figures —indeed, one infers that they preferred to keep a low profile—and so the constitutional considerations implicit when the media discuss public figures do not arise. Furthermore, *Locricchio* came to the Michigan Court of Appeals at the pleading stage; no discovery had been held, and as the result of the combination of these circumstances, the issue of actual malice was not before the court.

**5.** Plaintiff's allegations of defamation are no more specific than those condemned in *Simpson v. Oil Transfer Corporation, supra,* at 75 F.Supp. 822, or those found insufficient for defamation purposes in *Foltz v. Moore-McCormack Lines, supra,* 189 F.2d at 539, which approved *Simpson.*

ter completion of discovery, defendants moved for summary judgment. They argued that nothing in the article or program was false or defamatory; but that in any event, the discovery demonstrated that, as a matter of law, plaintiff could not prove actual malice by clear and convincing evidence that any statement was made with actual malice.

Plaintiff's answering papers identified eleven specific statements in the program and article which plaintiff claimed were false, defamatory, and known by defendants to be false. Brief at 224–228. They fell within one or another of the general areas of defamation plaintiff articulated in his pleadings. Plaintiff discussed these specific statements separately, with references to prior analyses in the brief (pages 37–156) of the evidence pertinent to each of them.

Defendants' reply papers focused upon those eleven statements. Defendants argued that certain of the statements were not false, or if false, not defamatory; but that in no case could plaintiff demonstrate actual malice.

The Court's opinion, granting summary judgment in part and denying it in part, similarly focused upon the eleven statements specified by plaintiff. The evidence as to each statement was reviewed. Nine statements were found to be nonactionable, and the remaining two statements actionable. 596 F.Supp. at 1198–1224.

Plaintiff now contends on reargument that the Court should not have concentrated upon the eleven statements discussed in the briefs, but should rather have adjudicated the summary judgment motion on the basis of plaintiff's more general and conclusory allegations of defamation set forth in the pleadings.

I cannot, under prevailing law, accept that proposition. It is simply not sufficient for a public figure libel plaintiff, bearing the burdens of proof imposed by existing law on the discrete issues of defamation, falsity, and actual malice, in resisting a summary judgment motion after extensive discovery, to proffer the full text of a media program or article and argue that its general tone or thrust could sustain a plaintiff's verdict. The media, protected by the First Amendment, and the Court, charged *inter alia* with its enforcement, are entitled to be directed by the public figure plaintiff to specific statements which are defamatory; false (the falsity lying *in haec verba* or dishonest juxtaposition of true statements); and which a jury could find on clear and convincing evidence were published with actual malice. The present plaintiff undertook that burden in his opposing papers, and the Court dealt fully with the issues as raised. Disappointed in the result, and under the guise of a motion for reargument, plaintiff attempts a different and less demanding approach which constitutional principles reject. Plaintiff's difficulty lies in part in the failure to plead specifically; but it is much more than that. After comprehensive discovery, plaintiff has not shown, save for the two statements as to which summary judgment was denied, that a reasonable jury could find actual malice in respect of any statement uttered by any defendant.[6]

I have considered the other contentions of the parties. They do not conform to the

---

**6.** I am inclined to the view that, when a public figure plaintiff sues the media for libel, he must allege the actionable words with precision or be non-suited. Such a requirement is not inconsistent with the rule that the allegedly offending publication must be read as a whole; that salutary principle requires that the specified words be read in context. *Cf. Cianci v. New Times Publishing Co.,* 639 F.2d 54 (2d Cir.1980), where the former mayor of Providence pointed to the headline in a newspaper article about him— "BUDDY WE HARDLY KNEW YA"—and Judge Friendly observed that a jury, "considering this in light of the article as a whole, could surely conclude that New Times was saying that Mayor Cianci" was a disreputable character. It is a quite different proposition to say that a public figure plaintiff sufficiently alleges a defamation action against the media without specifically identifying the offending statements, relying instead upon general allegations of insinuation or suggestion. I would be inclined to hold, in a case where the issue is squarely presented, that the First Amendment protection afforded to the press includes protection against embarking upon that slippery slope of interpretation. But I need not decide the issue in the case at bar, because defendants moved not on the pleadings,

requirements of the rule governing motions for reargument, and require no further discussion.[7]

The motions for reargument are denied in their entirety. Trial will go forward in accordance with the separate scheduling order entered concurrently.

It is SO ORDERED.

but for summary judgment after comprehensive discovery.

7. Plaintiff offers, in his briefs on reargument, four additional specific statements said to be actionable. Main Brief on Reargument at 25–27. Given the chronology of the case, these additional claims are untimely. In any event, the statements are not actionable.

Plaintiff attacks the credibility of helicopter pilot Plantz's descriptions of incidents involving Herbert, as recounted by Wallace on the program. But Lando, who researched the program, was not required in law to credit Herbert's denials, or the hearsay opinions of Kahila, Peyser and Bruce Potter that such incidents were unlikely to have occurred; or pursue independent corroboration of Plantz. There is no evidence that Lando or Wallace knew Plantz's statements were false, or that they had a "high degree of awareness of their probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964), cited in this Court's prior opinion at 596 F.Supp. 1187.

Rosenblum's opinion that the Barnes investigation "wasn't a whitewash," included on the program, was his personal opinion, based on reasons which he articulated, and is not actionable on any theory. Furthermore, the facts that Barnes "took the Fifth" and the investigators chose not to call as witnesses certain individuals is not inconsistent with Rosenblum's reasoning, or the opinion he expressed that the Army conducted a thorough investigation.

Wallace's statement and Lando's writing concerning the claims of LTC Nicholson and Major Crouch that they flew back from Hawaii to Vietnam with Franklin are peripheral to the particular defamation plaintiff alleges, namely, that Franklin was not in Vietnam on February 14 to receive the report that Herbert says he gave him. See 596 F.Supp. at 1210–1212. On reargument plaintiff argues Crouch should not be believed. The reasons given do not, and could not, amount in law to a showing that Lando knew what both Crouch and Nicholson reported about their trip with Franklin were false or probably so.