

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-29-2004

# Myers v. Med Ctr DE Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2373

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

## Recommended Citation

"Myers v. Med Ctr DE Inc" (2004). *2004 Decisions.* Paper 452.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/452

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2373

JOSEPH MYERS,
Appellant

v.

MEDICAL CENTER OF DELAWARE, INC.;
FRANCIS MASE, individually and as an agent, servant
or employee of the Medical Center of Delaware, Inc.;
LUCIA BENZONI, individually and as an agent, servant
or employee of the Medical Center of Delaware;
J. A. NEMER, individually and as an agent, servant
or employee of the Medical Center of Delaware, Inc.;
MICHELLE HINSON, individually and in her official capacity as
New Castle County Police Officer;
DOE 1 THROUGH 10, individually and in their official capacities as
New Castle County Police Officers;
DOMENICK GREGORY*; JACK GAHAN*;
MALVERN SLAWTER; JOHN HAUG;
DOCTORS FOR EMERGENCY SERVICES, P.A.;
DR. ANITA H. HODSON

*(Dismissed Pursuant to Clerk order dated 3/16/04)

On Appeal from the United States District Court
for the District of Delaware
D.C. Civil Action No. 97-cv-00461
(Honorable Gregory M. Sleet)

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 25, 2004
Before: SCIRICA, *Chief Judge*, RENDELL and ALARCÓN*, *Circuit Judges*

(Filed:  July 29, 2004)

---

## OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

In this matter, appellant Joseph Myers alleges the District Court erred in granting summary judgment in favor of certain medical doctors and police officers involved in events related to the tragic death of his five-year-old child, Valeria Myers.  We will affirm.

**I.**

On June 11, 1995, when Joseph Myers returned home to his mobile home in the Delaware City Trailer Park, he noticed his daughter Valeria had gotten into bed with his wife Phyllis.  When he awoke, Valeria appeared to be sleeping on the floor, but Phyllis discovered she was not breathing.  Paramedics arrived at around 6:00 pm and attempted to revive her.  Valeria was transported by helicopter to the emergency room of the Medical Center of Delaware, but she remained unresponsive to revival attempts by the medical staff.  She was pronounced dead at approximately 6:30 pm.

---

*The Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Judicial Circuit, sitting by designation.

At that point in time, several emergency room doctors performed a "secondary survey," a more extensive physical examination of Valeria. The doctors noticed signs of what they believed to be sexual abuse. One of the emergency room residents informed Detective Michelle Hinson of the Newcastle County Police Department that Valeria may have been sexually abused. Officer John Haug of the Police Department's Evidence Detection Unit took photographs of Valeria during the secondary examination. Detective Jack Gahan of the Criminal Investigation Unit arrived, examined the body, and was informed that Valeria had been sexually molested.

Joseph and Phyllis Myers arrived at the Medical Center at 9:00 pm and were permitted to view their daughter's body. They were then taken by police into headquarters for questioning, during which time Officer Domenick Gregory prepared a search warrant of the Myers' mobile home. Pursuant to a search warrant, Officer Haug and Officer Malvern Slawter entered and searched the home and seized videotapes, sexual toys, and devices.

At 6:00 am the next morning, Joseph and Phyllis Myers were released from police custody. Later that day, Assistant Medical Examiner Dr. Adrienne S. Perlman performed an autopsy of Valeria and found no evidence of physical or sexual abuse. Dr. Perlman concluded Valeria died from "natural causes." The Myers were informed of this finding. Myers requested return of his seized property, but Detectives Hinson and Gahan told him the videotapes would be kept temporarily to determine whether any of the tapes contained

3

child pornography. Ten days later, the detectives contacted Myers to arrange the return of the videotapes. Myers did not pick up the tapes from the station house until August 11, 1995, forty days later.

**II.**

In June 1997, Myers filed suit against the Medical Center of Delaware, the doctors who performed the secondary survey ("medical defendants"), and the police officers and detectives who performed the investigation and search of his home. He alleged the police officers violated his Fourth Amendment rights by searching the house without probable cause and without a valid warrant, and he sought the return of four constitutional law books that were allegedly seized. He also claimed the detectives improperly retained his videotapes. Myers also claimed the medical defendants committed malpractice when they erroneously found that Valeria had been sexually abused, and that they slandered him by implying he abused his daughter.

The District Court found Myers failed to present competent expert medical testimony to support his claims of negligence against the medical defendants, a statutory requirement under Delaware law. *Myers v. Med. Ctr. of Del., Inc.,* 86 F. Supp. 2d 389, 407 (D. Del. 2000). It also found Myers failed to present a prima facie case of defamation against the medical defendants, and in the alternative, that the medical defendants were immune from suit, as their report to the police was protected by statute. *Id.* at 412. Therefore, it granted summary judgment in favor of the medical defendants.

4

As for the police officers, the court found that Officers Gregory and Haug violated Myers's constitutional rights and held them liable for their participation in the search, granting partial summary judgment against the two officers. But it held that Officer Slawter and the detectives acted reasonably and in good faith and were immune from suit. *Id.* The court then certified the case for appeal under Fed. R. Civ. P. 54(b), despite outstanding damage claims against Officers Gregory and Haug. In a separate opinion, the court denied Officers Gregory and Haug's motion to reconsider. *See Myers v. Med. Ctr. of Del., Inc.,* No. CIV.A.97–461-GMS, 2000 WL 1728261 (D. Del. May 4, 2000).

Myers appealed and Officers Gregory and Haug cross-appealed. In a not precedential opinion, we found appellate jurisdiction over the denial of qualified immunity for Officers Gregory and Haug. *Myers v. Med. Ctr. of Del., Inc.,* 28 Fed. Appx. 163, 2002 WL 229493 (3d Cir. Feb. 15, 2002). We affirmed the denial of qualified immunity for Officer Gregory but reversed the denial of qualified immunity for Officer Haug, finding that Haug acted reasonably in relying on his superior officers and his own knowledge of the facts. *Id.* at 167. Because there was no final order with respect to the appeals other than those relating to qualified immunity, we lacked appellate jurisdiction. Rule 54(b) certification was not appropriate.

In March 2003, a jury trial commenced to determine any damages Officer Gregory caused in violating Myers' Fourth Amendment rights. *Myers v. Gregory,* No. CIV.A.97-461-GMS, 2003 WL 1872973, at *1 (D. Del. Apr. 9, 2003). The jury found that "Myers

5

was not entitled to damages because Gregory's violation was not the proximate cause of his injury." *Id.* Myers' motion for a new trial was denied. *Id.*

In this appeal, Myers raises no challenge relating to the jury trial or damages of Officer Gregory or to our finding of qualified immunity for Officer Haug. Instead, Myers contends the District Court improperly granted summary judgment in favor of the medical defendants, Officer Slawter and Detective Hinson. Specifically he argues the court erred in excluding Dr. Perlman's testimony and consequently granting judgment as a matter of law in favor of the medical defendants, in rejecting his defamation claim against the medical defendants, and in finding Detective Hinson and Officer Slawter protected from suit by qualified immunity.

## III.

We exercise plenary review over District Court's grant of summary judgment. *Watson v. Eastman Kodak Co.,* 235 F.3d 851, 854 (3d Cir. 2000). We have jurisdiction under 28 U.S.C. § 1291.

## IV.

### A.     Medical Defendants

#### 1.     Judgment as a Matter of Law due to lack of expert testimony

To file a lawsuit in Delaware alleging medical malpractice, a plaintiff must include evidence of the alleged deviation from the applicable standard of care proffered by an qualified medical expert. 18 Del. C. § 6853(a)(1); *Burkhart v. Davies,* 602 A.2d 56, 59

6

(Del. 1991). Among other things, the expert must be "familiar with the degree of skill ordinarily employed in the field of medicine on which he or she will testify." 18 Del. C. § 6854; *Loftus v. Hayden,* 391 A.2d 749, 753 (Del. 1978).

The District Court found Myers' sole proffered expert, Dr. Adrienne Sekula-Perlman, a forensic pathologist, was not qualified to testify about the standard of care applicable to emergency room physicians. It concluded that, absent the testimony of any qualified medical expert, Myers lacked competent standard of care testimony in support of his claim, and the medical defendants were entitled to judgment as a matter of law. We review the court's decision to exclude the expert testimony of Dr. Sekula-Perlman for abuse of discretion. *See General Elec. Co. v. Joiner,* 522 U.S. 136, 138-39 (1997).

Myers contends the medical defendants who were emergency room physicians were actually performing the duties of a pathologist when they performed the secondary survey. For this reason, he contends Dr. Sekula-Perlman could testify on the standard of care for physicians generally performing a post-death examination.[1] He also argues the methodology for identifying the changes in a deceased person are the same for emergency doctors and for pathologists, so Dr. Sekula-Perlman should be able to opine on the

---

[1] Dr. Sekula-Perlman's affidavit stated the emergency room physicians usurped the duties of a pathologist when they performed the secondary survey. But Dr. Sekula-Perlman "admitted that she is neither trained nor certified in emergency medicine. Furthermore, she has stated that there is no overlap between the two fields because the death of the patient automatically separates the two." *Myers,* 86 F. Supp. 2d at 411.

performance of the emergency doctors.[2]

But the medical defendants presented two experts in emergency medicine who opined the secondary survey is standard procedure in emergency medicine.[3] One of the experts testified further that failure to perform the survey constitutes a breach of the standard of care for emergency physicians.[4] Furthermore, Dr. Sekula-Perlman

---

[2]While a practitioner of one school of medicine is generally not permitted to testify as an expert witness in a malpractice action against a practitioner of another school of medicine, the Delaware Superior Court has recognized exceptions where: (1) an expert is familiar with the defendant's practice area, or (2) the two specialties involve a concurrent area of expertise and a common standard of care. *See Hurley v. Med. Ctr. of Del., Inc.,* 1988 WL 130399 (Del. Super. Ct. Nov. 28, 1988) (not published). Myers contends Dr. Sekula-Perlman's testimony falls under both exceptions. But Dr. Sekula-Perlman conceded she was not familiar with emergency medicine practices, and she also stated there is no crossover between the two fields. As such, the *Hurley* exceptions do not apply.

[3]The District Court noted:
> The medical defendants . . . have introduced the testimony of Cynthia Christian, M.D., who is board certified in emergency medicine and specializes in the care of children. According to Dr. Christian, "a physician who is presented with a child who dies in the emergency room would always complete the physical examination of their patient," including the secondary survey, in order to determine whether any conclusions could be reached "about the cause of death, regardless of whether it [resulted from] child abuse and neglect or gangrene . . . ."

*Myers,* 86 F. Supp. 2d at 411.

[4]According to the District Court:
> Frances Speidel, M.D., another one of the defendants' experts who is similarly trained and certified, has expressed the same conclusions. In fact, Dr. Speidel has testified that if the emergency room physicians had declined to perform this type of thorough physical examination after Valeria had been declared dead, they would have breached the governing standard of care.

*Id.*

acknowledged that she was not familiar with the standard of care for emergency room procedures.

Also, we note the court stated in a hearing on February 23, 1999 that Dr. Sekula-Perlman might not be qualified to testify as an expert witness, due to her lack of expertise in emergency medicine. It rejected Myers' medical negligence claims in January 2000. Despite being put on notice, Myers never presented a medical expert qualified to testify about the standard of care for emergency room physicians. *See generally Burkhart*, 602 A.2d at 60-61. We see no abuse of discretion in the District Court's ruling.

## 2. Defamation claim against medical defendants

Myers claims the medical doctors slandered him when they made statements to the police officers of alleged sexual abuse. To establish a claim, Myers must demonstrate: (1) a false and defamatory statement; (2) has been communicated; (3) the communication referred to Myers; (4) the police officers understood the communication's defamatory character; and (5) Myers was injured. *Los v. Davis,* No. 89C-OC-122, 1991 Del. Super. LEXIS 122, at *3 (Del. Super. Ct. April 9, 1991), *aff'd,* 602 A.2d 1081 (Del. 1991); *Re v. Horstmann,* No. 83C-FE-82, 1987 Del. Super. LEXIS 1276, at *8-9 (Del. Super. Ct. Aug. 11, 1987).

Myers claimed the doctors' communications implied he was a suspected perpetrator, since parents are "automatically" considered to be suspects in sexual abuse cases. He also argues the question of whether the statements were "of and concerning"

him should be reserved for the jury. The District Court rejected Myers' argument, stating, "[N]o doctor ever identified Myers by name. Nor did any physician state that 'it was probably the father who did it' or tell the police that they 'might want to talk to the dad.' Thus, there is no evidence that the comments made by the emergency room staff were 'of and concerning' Myers." *Myers,* 86 F. Supp. 2d at 412.

Myers makes a valid argument. *See* Restatement (Second) of Torts § 564 cmt. b (1977) ("It is not necessary that the plaintiff be designated by name; it is enough that there is such a description of or reference to him that those who hear or read reasonably understand the plaintiff to be the person intended. Extrinsic facts may make it clear that a statement refers to a particular individual although the language used appears to defame nobody.") Nevertheless, the medical defendants' statements to the police are protected statements. Statements made to a police officer to assist in the prevention or detection of a crime are protected from liability in defamation proceedings if the statements are made without malice. *Newark Trust Co. v. Bruwer,* 141 A.2d 615, 617 (Del. 1958); *Prosser & Keeton on Torts* § 114, at 815-16, 830 (5th ed. 1984).[5] The medical defendants here informed the police officers that Valeria had been sexually abused in order to assist in a

---

[5]*See also* Restatement (Second) of Torts § 598 cmt. d (1977) (A publication is conditionally privileged "when any recognized interest of the public is in danger, including the interest in the prevention of crime and the apprehension of criminals."); *Foltz v. Moore McCormack Lines,* 189 F.2d 537 (2d Cir. 1951) (noting that communications made without malice to law enforcement officials to aid in an investigation are protected).

10

potential criminal investigation.  There is no evidence of malice here.  The District Court correctly found these statements are privileged.

## B.     Qualified immunity for police officers

Qualified immunity shields "law enforcement officials who 'reasonably but mistakenly' conclude that their conduct comports with the requirements of the Fourth Amendment." *Sharrar v. Felsing,* 128 F.3d 810, 826 (3d Cir. 1997) (citing *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (per curiam)).  The privilege "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.*  The reasonableness of an officer's beliefs or actions is a question for the court.  *Id.* at 828.  We have held that officers may reasonably rely on the statements of other officers in believing probable cause for the actions existed.  *Sharrar,* 128 F.3d at 827-28.  Furthermore, officers need not read the content of a warrant if they have received instruction prior to the search regarding the nature of the investigation and the scope of the search.  *Marks v. Clarke,* 102 F.3d 1012, 1030 (9th Cir. 1996); *Guerra v. Sutton,* 783 F.2d 1371, 1375 (9th Cir. 1986); *Bilida v. McCleod,* 211 F.3d 166, 174-75 (1st Cir. 2000).

### 1.     Officer Slawter

On the evening of Valeria's death, Officer Slawter was dispatched to secure the Myers' mobile home.  Slawter already been informed that Valeria had been found dead in the mobile home and that she may have been sexually assaulted.  When his superior

11

officer informed him over the radio that the warrant had been signed, Slawter commenced to search the house. Slawter, along with Officers Haug and Gregory, seized materials he believed to be relevant to the investigation. The District Court granted Slawter qualified immunity, finding that he reasonably believed probable cause existed for performing the search due to information he received from his superior officers.

Myers contends the grant of qualified immunity was erroneous, since Slawter was incapable of conforming to the parameters of the search warrant without first having read it. But Slawter was informed by his superior officer prior to the search that he was to investigate the possible abuse of a minor and that a search warrant had been signed. The District Court did not err in finding that Slawter reasonably believed the search was legally justified, and that he was able to limit his search to those items relevant to an investigation regarding the sexual abuse of a minor. We see no error.

### 2. Detective Hinson

Canvassing the neighborhood on the night of the mobile home search, several residents told police that Myers' wife Phyllis was having sex with children. Because of this, Detectives Hinson and Gahan decided to review the seized videotapes to determine whether they involved child pornography. The review lasted one and a half weeks. The District Court determined the decision to review the materials was objectively reasonable and the detectives were following orders by their superiors.

Myers claims Detective Hinson acted unreasonably in reviewing the tapes after the autopsy revealed Valeria was not abused sexually. He contends there is a factual dispute as to whether it was Detective Hinson or her superior who made the ultimate decision to retain and review the tapes and that this issue should have been submitted to the jury. But this determination is immaterial, as the decision to retain and review the videotapes was objectively reasonable. As the District Court stated, "given the unfortunate frequency of this type of report today, the authorities would have been loath to summarily dismiss such allegations." *Myers,* 86 F. Supp. 2d at 409. The detectives reviewed the tapes to follow up on the allegations made by the neighbors, and they offered to return the tapes as soon as the review was completed. We see no error.

## C.   Replevin Claim

Finally, Myers claims the District Court erred in granting summary judgment on his replevin claim, alleging he should have been compensated for four constitutional law books that were allegedly seized during the search of his mobile home. But Myers has presented no evidence regarding the existence or seizure of these books. None of the police officers recalled seeing constitutional law books during the search at Myers' residence, let alone seizing them. There was no record of the books in the relevant Evidence Collection Log. As the District Court concluded, Myers "failed to submit any evidence which would enable a reasonable jury to return a verdict in his favor on this issue." *Myers,* 86 F. Supp. 2d at 410. We see no error.

13

## V.

For the foregoing reasons, we will affirm the judgment of the District Court.

_____