Roger ASAY, Appellee,

v.

HALLMARK CARDS, INC., Appellant.

No. 78–1521.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1978.

Decided March 19, 1979.

David C. Trowbridge, Kansas City, Mo. (argued), Tom Riley and Stephen J. Holtman of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, Iowa, on brief, for appellant.

Philip B. Mears, Iowa City, Iowa (argued), Jerald W. Kinnamon, Jon M. Kinnamon, Richard A. Pundt, Cedar Rapids, Iowa, and John M. Thompson, Springfield, Mass., on brief, for appellee.

Before GIBSON, Chief Judge, and BRIGHT and HENLEY, Circuit Judges.

GIBSON, Chief Judge.

Roger Asay filed a complaint in the United States District Court for the Northern District of Iowa on January 5, 1976, against Hallmark Cards, Inc. for damages arising from an alleged scheme to fraudulently deprive him of retirement benefits. On April 11, 1977, Hallmark filed a two-count counterclaim. The District Court, on April 5, 1978, dismissed Count I of the counterclaim and struck Count II, whereupon Hallmark filed a motion for entry of final judgment pursuant to Fed.R.Civ.P. 54(b) or, in the alternative, for leave to amend its counterclaim. The District Court entered final judgment in favor of Asay on Hallmark's counterclaim on May 26, 1978, and refused leave to amend the counterclaim. Hallmark appeals from this order. For the reasons hereinafter expressed, we reverse and remand to the District Court.

Asay commenced employment with Hallmark in 1960, but Hallmark released him in 1973 before he met the vesting requirements of the retirement plan. Asay was 37 at the time of his termination. Although Hallmark contended that deteriorating job performance led to the termination, Asay claimed that his dismissal was part of a plot to avoid payment of retirement benefits and brought suit against Hallmark. Over a year after the filing of the complaint, Hallmark filed its counterclaim. Count I of the counterclaim attempts to state a cause of action for abuse of process, while Count II refers to defamation. Unquestionably the counterclaim is inartfully drawn, but the gist of Count I is that Asay maliciously instigated the suit against Hallmark without any just cause for the purpose of inducing payment of a false claim. Count II sets

forth the substance of various defamatory statements allegedly made by Asay prior to and after filing his complaint and gives some details regarding publication.

### I.

Preliminarily, it is appropriate briefly to review the standards to be applied in ruling on a motion to dismiss. In *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), the Supreme Court stated:

> In appraising the sufficiency of the complaint, we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. [Footnote omitted.]

In *Lewis v. Chrysler Motors Corp.*, 456 F.2d 605, 607 (8th Cir. 1972), *quoting* C. Wright, Law of Federal Courts § 68 at 285–86 (2d ed. 1970), this court noted that "[t]his rule, which has been stated literally hundreds of times, precludes final dismissal for insufficiency of the complaint except in the extraordinary case where the pleader makes allegations that show on the fact of the complaint some insuperable bar to relief."

The pleading rules regarding amendment have also been interpreted in accord with the principle that the purpose of pleading is to facilitate a proper decision on the merits.

In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court stated:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10. If the underlying facts or circumstances relief upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

See also *Wilburn v. Pepsi-Cola Bottling Co. of St. Louis*, 492 F.2d 1288, 1290 (8th Cir. 1974).

### II.

 In the case at bar, the District Court dismissed the abuse of process count on the basis that it failed to allege that Asay had attempted to obtain a collateral advantage not properly includable in the process itself. The court correctly found that the purpose of settlement is includable in the goals of proper process. *Bickel v. Mackie*, 447 F.Supp. 1376, 1383 (N.D.Iowa 1978); *Brody v. Ruby*, 267 N.W.2d 902, 905–06 (Iowa 1978).[1]

 Hallmark acknowledges that "the counterclaim is not a model of clarity," but argues that it should have been granted leave to amend. Hallmark argues that the factual allegations contained in Count II of the counterclaim demonstrate that Asay

---

1. The District Court also noted that Hallmark had not pled special damages. Although the majority rule does not require special injury for either malicious prosecution or abuse of process actions, Prosser, Law of Torts §§ 119, 121 at 849–50, 858 (4th ed. 1971), Iowa clearly requires special damages for malicious prosecution actions. *Brody v. Ruby*, 267 N.W.2d 902 (Iowa 1978); *Aalfs v. Aalfs*, 246 Iowa 158, 66 N.W.2d 121 (1954); *Wetmore v. Mellinger*, 64 Iowa 741, 18 N.W. 870 (1884). This may indicate that special damages are also a prerequisite for abuse of process actions under Iowa law. We need not decide this issue, however, because Hallmark asserts that it has sustained special injury.

sought to use judicial process to defame Hallmark; to injure its reputation, business and relations with its employees; and to encourage additional litigation against it. Hallmark also claims that it has suffered special damages in terms of economic harm caused by disruption of its normal business operations and relations.

In this situation, we find that the District Court erred in its dismissal and failure to allow amendment of Hallmark's counterclaim. Although Count I was marginal in stating a cause of action for abuse of process under Iowa law, the factual allegations contained in the counterclaim as a whole indicated the possibility of a proper subject of relief, and Hallmark should have been afforded an opportunity to test its claim on the merits.

### III.

■ The District Court ordered Count II stricken[2] on the basis that "it appears that all specifically alleged publications were made during and incident to plaintiff's legal action and therefore are immune from this defamation counterclaim" and that the statements allegedly made prior to filing

the complaint lacked "the specificity generally necessary to state a cause of action under Iowa law." The counterclaim separates the allegedly defamatory statements into three categories. The first two categories relate to circumstances involving the underlying litigation. Paragraph 10(a) of the counterclaim alleges that Asay caused to be published by the news media certain defamatory statements regarding Hallmark. The parties and court below have accepted that this refers to the dissemination of Asay's complaint against Hallmark. It is alleged that either Asay or his attorney sent copies of the complaint to various news services with the malicious intent to defame Hallmark. Paragraph 10(b) of the counterclaim charges defamation of Hallmark by form letters promulgated by Asay. It is understood that this refers to certain letters of inquiry denominated "witness interrogatories" sent by Asay to various employees and former employees of Hallmark. Asay contends that he used these letters to investigate the propriety of proceeding against Hallmark in the form of a class action.[3] The District Court apparently interpreted Iowa law as granting absolute immunity from defamation charges for communica-

2. The District Court ordered Count II "stricken" while it "dismissed" Count I, but its order does not indicate why it chose to differentiate the manner of disposition of the two counts. Although it is appropriate in some situations to strike a pleading for gross violation of Rule 8, Fed.R.Civ.P., or when the material contained in the pleading is scandalous, immaterial or redundant, *Skolnick v. Hallett*, 350 F.2d 861 (7th Cir. 1965); 2A Moore, Federal Practice ¶ 12.21 (2d ed. 1975), the District Court basically held that Count II failed to state a claim upon which relief could be granted because the statements alleged in paragraphs 10(a) and (b) were privileged and the statements alleged in paragraph 10(c) were not set forth with sufficient specificity. In this situation we review the District Court's disposition of Count II using the standard applicable to motions to dismiss.

In *Bertucelli v. Carreras*, 467 F.2d 214, 215 (9th Cir. 1972), the Ninth Circuit stated:

We see no difference, in purpose and effect, between an order striking an entire pleading and a dismissal order predicated upon fatally defective pleading. See *Skolnick v. Hallett*, 350 F.2d 861 (7th Cir. 1965); 2A Moore's Federal Practice ¶ 8.13. Such orders are not

favored (*Id.* at ¶¶ 8.13, 12.21), but when they are made, ample opportunity for amendment should be provided in all except the most unusual cases. See III Moore's Federal Practice ¶ 15.10.

3. This litigation has involved substantial activity regarding the possibility of a class action. Asay's original complaint, filed January 5, 1976, stated that "plaintiff brings this action on his own behalf and in a representative capacity on behalf of all other persons similarly situated, namely, all persons who have been wrongfully terminated and lost pension benefits that would normally accrue to them after fifteen (15) years of employment with the defendants." On January 20, 1976, Hallmark moved for an order prohibiting communication with potential or actual class members. The District Court denied this motion without prejudice on March 8, 1976. Hallmark again moved for an order limiting communications with actual or potential members of the class. On April 12, 1976, the District Court denied this motion. Asay's initial motion for certification of maintenance of a class action was denied August 20, 1976, but as of the submission of this appeal another motion for certification as a class action was pending.

tions made in the circumstances of these allegations.[4]

■ The leading Iowa decisions explaining the immunity to be accorded communications related to judicial proceedings have already been extensively reviewed by this court. *Johnston v. Cartwright*, 355 F.2d 32 (8th Cir. 1966). Iowa law recognizes a narrow privilege with respect to certain utterances made in connection with judicial proceedings and emphasizes the presence of judicial control. Iowa accepts the position of the Restatement of the Law of Torts, § 586, which states:

> An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation thereto.

355 F.2d at 36–37. This privilege applies equally to parties and witnesses. *Robinson v. Home Fire Ins. Co.*, 242 Iowa 1120, 49 N.W.2d 521, 527 (Iowa 1953); Restatement of the Law of Torts 2d, §§ 587 and 588 (1977).

The application of this privilege requires a two-part analysis. First, the occasion of the communication must be examined to determine if the statement was made "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding." Then the content of the statement must be evaluated to determine if it "has some relation [to the proceeding]."

Comment *a* of § 586 of the Restatement of Torts 2d elucidates the narrowness of the scope of judicially privileged occasions in stating:

The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceeding. The institution of a judicial proceeding includes all pleadings and affidavits necessary to set the judicial machinery in motion. The conduct of the litigation includes the examination and cross-examination of witnesses, comments upon the evidence and arguments both oral and written upon the evidence, whether made to court or jury.

■ Applying Iowa law to the allegations of Count II of the counterclaim, we find that Asay was not entitled to an absolute privilege on the basis of the pleadings. In determining whether an occasion is absolutely privileged, the pivotal factor is frequently to whom the matter is published. Publication to the news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion. *Barto v. Felix*, 250 Pa.Super. 262, 378 A.2d 927 (1977) (statements made at press conference); *Bradley v. Hartford Accident & Indemnity Co.*, 30 Cal.App.3d 818, 106 Cal. Rptr. 718 (1973) (statements made to newspaper and television reporters regarding documents that were filed with the court for the sole purpose of having defamatory statements contained therein disseminated to the media); *Kennedy v. Cannon*, 229 Md. 92, 182 A.2d 54 (1962) (attorney's statement to editor of newspaper regarding his criminal client's defense). *Cf. Chandler v. O'Bryan*, 445 F.2d 1045 (10th Cir. 1971) *cert. denied*, 405 U.S. 964, 92 S.Ct. 1176, 31 L.Ed.2d 241 (1972) (federal judge delivering allegedly libelous statements to a newspaper editor not immune from liability in state libel action.)

---

4. Iowa recognizes two general classes of privileged communications: (1) those that are absolutely privileged, and (2) those that are qualifiedly or conditionally privileged. When it is alleged that a communication has been made with actual malice, only an absolute privilege affords a complete defense. *Mills v. Denny*, 245 Iowa 584, 63 N.W.2d 222, 225 (1954); *Robinson v. Home Fire & Marine Ins. Co.*, 242 Iowa

1120, 49 N.W.2d 521, 524 (1953). Since Hallmark's counterclaim alleges that the "defamatory statements were made by plaintiff wantonly and recklessly and without regard to the truth of them, and with the intent and design to injure, disgrace and defame defendant and to bring defendant into public discredit," only the existence of an absolute privilege would warrant dismissal on the basis of immunity.

■ This approach accords with the public policy recognizing the necessity for privilege for statements related to judicial proceedings. Allowing defamation suits for communications to the news media will not generally inhibit parties or their attorneys from fully investigating their claims or completely detailing them for the court or other parties. Also, the important factor of judicial control is absent. *See* 49 N.W.2d at 525. The salutary policy of allowing freedom of communication in judicial proceedings does not warrant or countenance the dissemination and distribution of defamatory accusations outside of the judicial proceeding. No public purpose is served by allowing a person to unqualifiedly make libelous or defamatory statements about another, but rather such person should be called upon to prove the correctness of his allegations or respond in damages. The privilege or immunity granted to defamatory statements in judicial proceedings is a narrow one. "The scope of the privilege is restricted to communications such as those made between an attorney and client, or in the examination of witnesses by counsel, or in statements made by counsel to the court or jury." *Kennedy v. Cannon, supra,* 182 A.2d at 58. *See* Restatements of Torts 2d § 586, comments *a* and *c*. Thus, while a defamatory pleading is privileged, that pleading cannot be a predicate for dissemination of the defamatory matter to the public or third parties not connected with the judicial proceeding. Otherwise, to cause great harm and mischief a person need only file false and defamatory statements as judicial pleadings and then proceed to republish the defamation at will under the cloak of immunity.

The circumstances of *Johnston v. Cartwright,* 355 F.2d 32 (8th Cir. 1966), are distinguishable. In that case we held that an attorney who made a statement to a newspaper concerning impending litigation was protected by an absolute privilege warranting dismissal of a defamation claim filed against him. The impending litigation was a potential libel suit regarding an advertisement that had been run in the newspaper. The attorney represented both the newspaper and the union that had placed the advertisement. Aside from the issue of attorney-client privilege, it is apparent that the newspaper had an interest in the potential judicial proceeding unrelated to its general interest in disseminating news to the public. The newspaper was a potential party and the attorney's comments directly related to a defense that the newspaper might wish to assert. Both the occasion and the contents of the communication fit within the test of privilege.

■ The "witness interrogatories" may also not be subject to absolute immunity. On the basis of the pleadings it is difficult to ascertain to whom these letters were sent or how closely the contents related to the judicial proceeding. Publications made during and incident to a legal action are not automatically absolutely privileged. A case-by-case evaluation must be made to determine whether the publication fits within the narrow privilege. The advice of the District of Columbia Circuit Court of Appeals in *Brown v. Collins,* 131 U.S.App. D.C. 68, 72, 402 F.2d 209, 213 (1968), should be heeded.

> Such special immunity is not lightly conferred, however, as it protects deliberate lies told with intent to destroy reputation. Where dealing with preliminary statements other than witness briefings, settlement discussions and the like, there is need for particularly close attention to the factual circumstances, recognizing that unlike statements made in court, these communications are not cabined by a litigant's recognition that contempt of court may follow if they are outrageously unnecessary and intemperate, even though more or less relevant.

The District Court acted prematurely in disposing of these charges on the basis of an absolute privilege.

■ The District Court disposed of the allegations in paragraph 10(c) because they lacked "the specificity generally necessary to state a cause of action under Iowa law." The manner of setting forth allegations is a matter of procedure, not sub-

stance, and a federal court cannot be bound by a state's technical pleading rules. *Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc.*, 367 F.2d 625, 629 (3d Cir. 1966). Nevertheless, the use of *in haec verba* pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings. *Holliday v. Great Atlantic & Pacific Tea Co.*, 256 F.2d 297, 302 (8th Cir. 1952), *Foltz v. Moore McCormack Lines, Inc.*, 189 F.2d 537, 539 (2d Cir.), *cert. denied*, 342 U.S. 871, 72 S.Ct. 106, 96 L.Ed. 655 (1951); *Drummond v. Spero*, 350 F.Supp. 844, 845 (D.Vt. 1972); *Cimijotti v. Paulsen*, 219 F.Supp. 621, 622 (N.D.Iowa 1963), *aff'd* 340 F.2d 613 (8th Cir. 1965). We have already demonstrated the need for a certain degree of specificity in order to evaluate the possibility of a privilege. The District Court could easily find that the requisite degree of specificity was absent from paragraph 10(c) of the counterclaim because it does not give any indication to whom the alleged statements were made and describes the statements in vague terms.

The content of the allegedly defamatory communications must also be examined to determine if they have "some relation [to the proceeding]." We note that Asay's allegations regarding Hallmark's violation of antitrust laws and investigation for illegal campaign contributions do not appear pertinent or relevant to his lawsuit for improper termination of his employment. The injection of these statements also lends substance to Hallmark's claim that Asay's suit was filed for the collateral purpose of retribution for his termination and for the purpose of inflicting economic harm and injuring Hallmark's business reputation. Also, Asay's letters of inquiry to other employees allegedly containing defamatory statements are suspect as possibly showing champerty in encouraging litigation and a pattern of harassment of Hallmark. Asay's complaint is based on his alleged wrongful termination of employment. This single issue can be legally addressed and judicially determined without the injection of irrelevant defamatory charges.

Despite the inartful pleading, we conclude that the District Court erred in striking the allegations. Hallmark contends that it should have been provided an opportunity to amend and has indicated that it can provide specific details regarding its allegations. In accord with the policy liberally to permit amendment, we find that the failure of the District Court to allow amendment constituted error.

In summary, we hold that the District Court should have permitted amendment of the counterclaim and that Iowa law does not grant an absolute privilege for the dissemination of a complaint to news services. We express no opinion on the merits of the counterclaim.

The order of the District Court is reversed and the cause remanded for further proceedings consistent with this opinion.