Maureen **HOTH**, f/k/a Maureen Prond-zinski, and John L. Hoth, Plaintiffs,

v.

**AMERICAN STATES INSURANCE COMPANY**, a corporation, Defendant.

No. 89 C 3658.

United States District Court, N.D. Illinois, E.D.

April 25, 1990.

Edward J. Whalen, William T. Coleman, Susan M. Langlotz, Hedberg, Tobin, Flaherty & Whalen, Chicago, Ill., for plaintiffs.

J. Robert Geiman, Robert L. Suomala, Michael S. Loeffler, Peterson, Ross,

Schloerb & Seidel, Chicago, Ill., David J. Novotny, Elmhurst, Ill., William A. Chittenden, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

American States Insurance Company has moved to dismiss Counts 5–6[1] of the Consolidated Second Amended Complaint of Maureen and John L. Hoth, pursuant to Rule 12(b)(6), Fed.R.Civ.Pro. Count 5 is John's claim that American States defamed him. Count 6 is his claim that American States invaded his privacy.

The facts alleged in the Hoths' current complaint are these: The Hoths are Illinois residents; American States is an Indiana corporation based in Indianapolis, Indiana. Both Hoths have been employees of the corporation. In 1984, Maureen was working as an assistant office manager for the firm. In August Maureen injured her back while working, and soon began receiving temporary disability payments under Illinois's workers' compensation scheme. Maureen returned to work for two weeks in October 1984, but her back continued to hurt her. On November 1, 1984, she filed a workers' compensation claim with the Illinois Industrial Commission. Five months later, allegedly in retaliation for Maureen's filing of her claim and for drawing medical attention to her injuries, American States fired Maureen. John remained with the firm as a division claims supervisor.

In December 1988, John told his supervisor, Ben Rice, that he had witnessed Maureen's accident and that he would testify on her behalf at an administrative hearing. Rice told John that if he testified, he could "jeopardize" his job. American States then undertook a campaign to discredit John and to fire him. Rice and a company investigator, Sandy Navarro, searched John's office after working hours, while John was absent. They undertook the search ostensi-bly for the purpose of locating the claim file for a salvage car which John purchased in 1986. After purportedly finding the file, Rice and Navarro continued their search, which included opening a locked file cabinet and rummaging through John's desk.[2] The search included John's personal papers and property.

After the search, Navarro wrote a memorandum in which she falsely accused John "of a lack of integrity in the discharge of his employment duties." Navarro made this allegation in reckless disregard of whether it was true. Meanwhile, Rice falsely told two people (one of whom was a vice-president of the company) that John had concealed his purchase of the salvage car by retaining the claim file and not returning it to the file storage area. On January 18, 1989, Rice fired John. He then falsely announced to several American States employees that John had been fired for "improprieties" in connection with the purchase of the car. John filed suit against American States four months later.

■ American States first argues that John's defamation claim is unspecific, and thus this court should dismiss it with prejudice. The courts of this district are split over the proper way to plead defamation claims when those claims, as Hoth's here, are subject to Illinois law. In *Derson Group, Ltd. v. Right Mgt. Consultants, Inc.*, 683 F.Supp. 1224, 1229–30 (N.D.Ill. 1988), the court required plaintiff Derson to allege the specific words which were defamatory. While the court acknowledged that federal law controlled the manner of pleading defamation claims in the federal courts, the court held that federal law itself required pleading of specific words in defamation actions. Although the court did not identify which federal rule or statute imposed the requirement, the court stated that it relied on two cases. In *Herbert v. Lando*, 603 F.Supp. 983, 990–91 (S.D.N.Y.1985), rev'd in part on other

---

1. These counts are misnumbered in the Consolidated Second Amended Complaint as Counts IV and V.

2. The complaint is confusing about who searched these areas. Paragraph 33 of the complaint says Rice and Navarro did the search; paragraph 51 says a third party did it at their bidding.

grounds, 781 F.2d 298 (2d Cir.1986), the court required pleading of the specific words for two reasons. First, plaintiff Herbert was a public figure. The court believed that given the First Amendment's protections of speech relating to public figures, a public figure should plead the specific words in order to defeat any suggestion that the alleged defamation was protected. The court also believed that longstanding precedents from the Second Circuit controlled its decision.

It is not clear why the *Derson* court relied so heavily upon *Herbert.* Plaintiff Derson, like John Hoth, was not a public figure, and so the court's solicitude for the First Amendment was misplaced. See *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340, 345–46, 94 S.Ct. 2997, 3007, 3009–10, 41 L.Ed.2d 789 (1974) ("there is no constitutional value in false statements of fact"; states retain "substantial latitude" under the First Amendment to provide remedies to private individuals who are the victims of defamation). Second, this court has not found any precedents from the Seventh Circuit which suggest that it would follow the dusty Second Circuit precedents cited in *Herbert,* some of which seem to confuse state and federal pleading rules.

*Derson* relied on a second case, *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692 (8th Cir.1979). The *Asay* court acknowledged that "the use of *in haec verba* pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings." The court went on, however, to reverse a lower court's decision not to allow amendment of an unartful pleading to provide the specific allegations, suggesting that dismissal of the claim with prejudice was inappropriate.

■ *Derson* states an admirable principle, but imposes the wrong remedy. As *Derson* itself notes, federal procedures govern the pleading of state law defamation claims in federal court. See also *Jaffe v. Federal Reserve Bank of Chicago*, 586 F.Supp. 106, 110 (N.D.Ill.1984). The Illinois courts have noted that it often may be easier to state a claim for defamation under the notice pleading regime of the federal courts than under the fact pleading system which prevails in many state courts, such as those of Illinois. See *O'Donnell v. Field Enterprises, Inc.*, 145 Ill.App.3d 1032, 1042, 96 Ill.Dec. 752, 759, 491 N.E.2d 1212, 1219 (1986). Thus, John Hoth's failure to state the precise words written by Sandy Navarro or uttered by Ben Rice is not a ground in itself for dismissal under Rule 12(b)(6). This is not to suggest that it is unnecessary to plead the specific words used. Indeed, as *Asay* notes, knowledge of the exact words alleged often is necessary for the framing of an appropriate responsive pleading. For example, if the words reflect an opinion, rather than an assertion of fact, Hoth will not have a claim for defamation. See *Gertz*, 418 U.S. at 339–40, 94 S.Ct. at 3006–07. Hoth also will not have a claim if, after considering the statements in context, the court may reasonably interpret the words innocently or interpret them reasonably as referring to someone other than Hoth. See *Chapski v. Copley Press*, 92 Ill.2d 344, 352, 65 Ill.Dec. 884, 888, 442 N.E.2d 195, 199 (1982). The court will thus treat American States's motion as one for a more definite statement under Rule 12(e), and require John Hoth to describe within ten days more precisely the words allegedly employed by Rice and Navarro. American States may renew its Rule 12(b)(6) motion within five days of receipt of Hoth's statement.

■ American States next argues that regardless of what Navarro actually wrote to her superiors, her statements are conditionally privileged.

A communication is conditionally privileged where a defendant, who has a duty or interest to uphold, makes a remark, in good faith on a proper occasion in an appropriate way to proper parties, that is limited to the duty or interest he seeks to affirm.... A conditional privilege is lost when [the defendant] abuse[s] the immunity the law affords [him]. To show this, a plaintiff must prove the defendant acted with actual malice.

*Fascian v. Bratz,* 96 Ill.App.3d 367, 369, 51 Ill.Dec. 901, 903, 421 N.E.2d 409, 411 (1981). See also *Zeinfeld v. Hayes Freight Lines, Inc.,* 41 Ill.2d 345, 349–50, 243 N.E.2d 217, 221 (1968). A defendant makes a statement with actual malice when he or she knows that the statement is false, or makes the statement with reckless disregard of its falsity. See *Reed v. Northwestern Publishing Co.,* 124 Ill.2d 495, 506, 125 Ill.Dec. 316, 321, 530 N.E.2d 474, 479 (1988).

■ Hoth presents no arguments why this court should not disallow his claim relating to Navarro's memorandum, other than to insist that the court may not wrestle with affirmative defenses on a motion to dismiss. Hoth is wrong: the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim" on a motion to dismiss. Rather, "[d]ismissal is proper if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested." *R.J.R. Services, Inc., v. Aetna Cas. and Sur. Co.,* 895 F.2d 279, 281 (7th Cir. ?89). This is not to suggest that dismissal is warranted here. As noted above, actual malice will defeat a conditional privilege under Illinois law. Hoth has alleged that Navarro wrote her memorandum with reckless disregard for its falsity, which is tantamount to actual malice. Hoth has thus sufficiently alleged that if Navarro puts forth a claim of conditional privilege, he will defeat it.

■ The court thus will not dismiss Count 5 of Hoth's complaint at this time. As for Count 6, American States argues that the Illinois courts never have allowed an employee to sue his or her employer for invasion of privacy on account of a search of the workplace. Hoth submits that it would not take much for the Illinois courts to do so. Both parties agree that in those cases where the Illinois courts have found an invasion of privacy, the plaintiffs have alleged (1) "an unauthorized intrusion or prying into the plaintiff's seclusion," (2) an intrusion which is "offensive or objectionable to a reasonable man," (3) an intrusion into "private" matter, and (4) "anguish and suffering" resulting from the intrusion. See *Melvin v. Burling,* 141 Ill.App.3d 786, 789, 95 Ill.Dec. 919, 921–22, 490 N.E.2d 1011, 1013–14 (1986). But see *Lovgren v. Citizens First National Bank,* 126 Ill.2d 411, 417–18, 128 Ill.Dec. 542, 544, 534 N.E.2d 987, 989 (1989) (noting possible conflict among appellate courts over existence of tort).

Even if this court merely applied *Melvin* to workplace searches, Hoth would not state a claim under it. First, Hoth's complaint does not allege that Rice and Navarro lacked authority to search his office, file cabinet, and desk. Second, Hoth has not claimed anguish and suffering as a result of the search. The only harm which Hoth has traced to the search is his firing, but the search was a remote cause of this (in fact, if Hoth is to be believed, the search could not have contributed to his firing, as Rice and Navarro found nothing incriminating). The direct cause of Hoth's termination, as alleged, was American States's plan to prevent Hoth from testifying.

John Hoth thus has failed to state a claim in Count 6 upon which this court may grant relief, and the court will dismiss it.[3] The court further orders John Hoth to provide a more definite statement of the words which American States used to defame him, within ten days.

---

**3.** The court thus will not discuss American States's contentions that the search of Hoth's office did not amount to an intrusion on Hoth's seclusion, or that a reasonable person could not find the search offensive.