**James R. WIGGINS, Jr., Plaintiff,**

v.

**PHILIP MORRIS, INC.,**

and

**Kenneth Nedimyer, Defendants.**

**Civ. A. No. 92–0493 (RCL).**

United States District Court, District of Columbia.

May 13, 1994.

John C. LaPrade, Washington, DC, Frazier Walton, Jr., Alexandria, VA, for plaintiff.

Jonathan Schiller, John Bickerman, Kaye, Scholer, Fierman, Hays & Handler, Washington, DC, for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the court on defendant Nedimyer's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Upon consideration of the filings of counsel and the relevant law, defendant Nedimyer's motion to dismiss is granted in part and denied in part in accordance with this memorandum opinion.

## I. Introduction

In his complaint, plaintiff seeks to recover damages for civil rights violations, violations of the Fair Credit Reporting Act, and pendent state-law claims. Kenneth Nedimyer moves to dismiss the only claim naming him as a defendant, the alleged violations of plaintiff's civil rights under 42 U.S.C. § 1981.[1]

### A. Motion to Dismiss

■ Plaintiff's factual allegations must be presumed true and liberally construed in favor of the plaintiff when reviewing the adequacy of a complaint for purposes of a Rule 12(b)(6) motion. *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C.Cir.1979) (citing *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977)). In addition, the plaintiff must be given every favorable inference that may be drawn from his allegations of fact. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." 2A *Moore's Federal Practice,* § 12.07, at 63 (2d ed. 1986) (footnote omitted); *see Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987) (citing *Pauling v. McElroy,* 278 F.2d 252, 254 (D.C.Cir.), *cert. denied,* 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60 (1960)).

■ Dismissal is only appropriate if it appears beyond doubt that no set of facts proffered in support of plaintiff's claim would entitle him to relief. *Haynesworth,* 820 F.2d at 1254 (citations omitted); *Phillips,* 591 F.2d at 968. Plaintiff's factual allegations are set out below.

### B. Facts

Plaintiff's interminable complaint is mired by numerous redundancies and inconsistencies. Wading through this bog, it appears that plaintiff, an African–American employee of Philip Morris, alleges that he was the target of at least one conspiracy motivated by racial animus. Compl. ¶¶ 8, 30–50. First, Mr. Wiggins seems to allege that there was a conspiracy within Philip Morris, Inc. to downgrade plaintiff's performance evalua-

---

1. Plaintiff's complaint is so poorly pled that his § 1981 count also contains minimal allegations of tortious interference with plaintiff's employment, defamation, mail fraud, wire fraud, violations of 42 U.S.C. § 1985(3), the Fair Credit Reporting Act, "and other federal laws." Counts one, three, and four of the complaint are directed solely at codefendant Philip Morris and are not addressed in this motion. Only in count two, based on 42 U.S.C. § 1981, does plaintiff demand judgment against defendant Nedimyer. Compl. ¶ 78(d). The remainder of the bare allegations are dealt with in section III *infra.*

tions, providing a basis for terminating him. *See id.* ¶ 16. Plaintiff alleges that defendant Nedimyer, plaintiff's second-line supervisor, and others agreed that "plaintiff would be discredited, defamed and financially destroyed by defendants' systematically marking down plaintiffs' [sic] performance ratings and transmitting the false results in a fraudulent manner in interstate commerce." *Id.* ¶ 73(1). According to plaintiff, "[t]he plan's goal was achieved on March 5, 1990." *Id.* ¶ 36. However, plaintiff claims that he was unlawfully terminated from Philip Morris in violation of his civil rights on February 9, 1990. Compl. ¶¶ 13, 78.[2]

## II. Inapplicability of 42 U.S.C. § 1981

 Plaintiff claims that he was harassed because of his race during the course of his employment and that this racial animus caused him to be fired. However, these claims were not cognizable under 42 U.S.C. § 1981 prior to the enactment of the Civil Rights Act of 1991, and these claims fail to state a cause of action upon which relief can be granted today.

The Civil Rights Act of 1991 became effective on November 21, 1991. *See Landgraf v. USI Film Products,* — U.S. —, —, 114 S.Ct. 1483, 1488–89, 128 L.Ed.2d 229 (1994); *Van Meter v. Barr,* 778 F.Supp. 83, 83 (D.D.C.1991). Prior to this time, the text of the statute read as follows:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to *make and enforce contracts,* to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is en-

joyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Congress enacted the 1991 amendments to section 1981 in response to the Supreme Court decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The Court concluded that racial harassment claims related to *existing employment conditions* were not actionable under section 1981, excluding recovery for conduct occurring after the formation of a contract that did not interfere with the enforcement of the contract.

With the 1991 amendments, Congress expanded the scope of actions covered by section 1981, adding the following definition for "make and enforce contracts":

(b) For purposes of this section, the term "make and enforce contracts" includes the making, *performance,* modification, *and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.*

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

### A. Retroactivity of the Civil Rights Act of 1991

In a recent Supreme Court decision, the Court determined that section 101 of the Civil Rights Act of 1991 does not apply retroactively. *Rivers v. Roadway Express, Inc.,* — U.S. —, —, 114 S.Ct. 1510, 1513, 128 L.Ed.2d 274, 1994 U.S. Lexis 3294, *5–6 (April 26, 1994).[3] Therefore, to the extent

---

**2.** Second, Mr. Wiggins seems to maintain that there was some sort of conspiracy between employees of Philip Morris, District Cablevision, and Equifax, Inc. to fire him based on a false Equifax background check. Compl. ¶¶ 30–50, 76, 77.

This second alleged conspiracy is the basis for plaintiff's claim in count four, requesting relief under the Fair Credit Reporting Act ("FCRA"). Although defendant Nedimyer is mentioned in the allegations of that count as being a purported member of the conspiracy, the count itself names only Philip Morris as a defendant. *Id.* ¶¶ 85, 94–97. The allegations of violations of the Fair

Credit Reporting Act and the conspiracy theory under the FCRA are summarily dismissed *infra* Section III.

**3.** This comports with this circuit's past decisions. *Gersman v. Group Health Ass'n,* 975 F.2d 886, 889–900 (D.C.Cir.1992) (adopting the decision in *Gersman v. Group Health Ass'n,* 931 F.2d 1565 (D.C.Cir.1991), *vacated and remanded,* — U.S. —, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992)), *cert. denied,* — U.S. —, 114 S.Ct. 1642, 128 L.Ed.2d 363 (1994); *Van Meter v. Barr,* 778 F.Supp. 83 (D.D.C.1991); *Allen v. McEntee,* 1993 WL 121513 (D.D.C. Apr. 2, 1993) (Lamberth, J.) (all holding that any new substantive rights cre-

that plaintiff contends that the Act should apply retroactively to this case, the claim is denied.

■ The complaint in this case was filed *after* the Civil Rights Act of 1991 became law. However, the conduct that forms the basis of the complaint occurred *before* the Act became law.[4] The application of a new statute to conduct that occurred prior to its passage must be considered a retroactive application of the statute. This court has held that the Civil Rights Act of 1991 does *not* apply retroactively to pre-Act conduct. *See Gersman v. Group Health Ass'n,* 975 F.2d 886, 900 (D.C.Cir.1992); *Allen v. McEntee,* 1993 WL 121513, 1993 U.S.Dist. LEXIS 4122 (D.D.C. Apr. 2, 1993).[5] Accordingly, to the extent that plaintiff contends that the Act was intended to include preenactment conduct, his claim is denied.

Thus, plaintiff's claim is only cognizable if it would survive under pre–1991 Amendment section 1981. "The rights of the parties must be adjudicated as they were under the law prevailing at the time of the conduct." *Gersman,* 975 F.2d at 900.

### B. The *Patterson,* Pre–Act Standard

Plaintiff's allegations were not viable under 42 U.S.C. § 1981 prior to the enactment of the Civil Rights Acts of 1991. Mr. Wiggins contends that defendant Nedimyer subjected him to racial harassment during his employment. Compl. ¶ 73. Plaintiff maintains that this racial animus led to his termination. *Id.* ¶¶ 70–78. Mr. Wiggins also asserts that he was denied training and that defendant deliberately obstructed plaintiff's rights to participate in the grievance procedures of Philip Morris.

■ Pre–Act section 1981 protects two rights: the right to enter into contracts and the right to enforce contracts. The facts as alleged by plaintiff do not implicate either right. As the Supreme Court stated in *Patterson v. McLean Credit Union,* section 1981 "does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Patterson v. McLean Credit Union,* 491 U.S. 164, 171, 109 S.Ct. 2363, 2369, 105 L.Ed.2d 132 (1989) ("Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations...").

Section 1981 does not protect an employee against discriminatory treatment during the course of his employment, including the imposition of discriminatory working conditions. *See Patterson,* 491 U.S. at 177, 109 S.Ct. at 2372–73; *Gersman v. Group Health Ass'n,* 931 F.2d 1565, 1570–72 (D.C.Cir.1991), *vacated and remanded,* —— U.S. ——, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992). Moreover, section 1981 does not apply to breach-of-contract or contract-termination claims. *See Gersman,* 931 F.2d at 1571 ("A termination necessarily arises after the contract is already made, and, like a breach of contract, is more appropriately dealt with under state contract law."). Thus, plaintiff's claims of racial harassment during his employment and discriminatory termination under section 1981 are dismissed.

■ An employer's refusal to offer training to an employee is not conduct involving the refusal to make a contract or the impairment of the enforcement of an established contractual right. *See Patterson,* 491 U.S. at 178–79, 109 S.Ct. at 2373–74.

■ Plaintiff's claim that defendant Nedimyer obstructed his "right" to participate in the internal Philip Morris grievance process is also not cognizable under section 1981. Plaintiff fails to allege the existence of any formal grievance procedure, his "established contractual right" to any such procedure, or

---

ated by the Civil Rights Act of 1991 do *not* apply retroactively).

**4.** As stated in the complaint, plaintiff was fired from District Cablevision on January 18, 1990 and from Philip Morris on February 9, 1990. Compl. ¶ 78. According to the complaint, "[t]he plan's goal (and plaintiff's termination) was achieved on March 5, 1990." *Id.* ¶ 36. All of these operative events antedate the effective date of the Act, November 21, 1991.

**5.** This determination is also supported by the Court in *Rivers v. Roadway Express, Inc.,* —— U.S. ——, ——, 114 S.Ct. 1510, 1520, 128 L.Ed.2d 274, 1994 U.S. Lexis 3294, *26 (April 26, 1994) ("[Section] 101 does not apply to *preenactment conduct.*" (emphasis added)).

any denial or obstruction of that right. A fair reading of plaintiff's complaint suggests the contrary: plaintiff made complaints and participated in meetings with supervisors at Philip Morris to air those complaints.[6] Plaintiff now protests his employer's substantive response to those complaints. Plaintiff is simply challenging another condition of his employment that is not actionable under *Patterson*.

### III. Other Claims in Count Two

Within the text of his section 1981 claim, plaintiff makes vague allegations of two counts of tortious interference with plaintiff's employment, defamation, and violations of the Fair Credit Reporting Act,[7] the federal wire and mail fraud statutes, 18 U.S.C. §§ 1341, 1343, the D.C.Code, conspiracy under 42 U.S.C. § 1985(3), and civil conspiracy.

#### A. Tortious Interference with Contract

Plaintiff alleges that the defendants "interfere[d] by unlawful means with [p]laintiff's employment." Compl. ¶ 73. Plaintiff states that he "was employed by and had an employment contract with Phillip Morris [sic]." *Id.* ¶ 72.

■ "Tortious interference with contractual relations arises when a defendant interferes with a contract between the plaintiff and some third party." *Weaver v. Gross,* 605 F.Supp. 210, 216 (D.D.C.1985) (citing *Donohoe v. Watt,* 546 F.Supp. 753, 757 (D.D.C.

1982), *aff'd,* 713 F.2d 864 (D.C.Cir.1983)). In order to recover for intentional interference with contractual relations, the plaintiff must prove four elements: "(1) existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its breach by the defendant, and (4) damages resulting from the breach." *Sorrells v. Garfinckel's, Brooks Brothers, Miller & Rhoads, Inc.,* 565 A.2d 285, 289 (D.C.1989) (quoting *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan,* 374 A.2d 284, 288 (D.C.1977)); *see Connors, Fiscina, Swartz & Zimmerly v. Rees,* 599 A.2d 47, 51 n. 6 (D.C.App.1991). Once these elements are shown, plaintiff may recover for intentional interference with contract "unless the defendant proves that his or her conduct was justified or privileged." *Sorrells,* 565 A.2d at 290.

"[T]he law affords ... a supervisor such as [defendant Nedimyer] a qualified privilege to act properly and justifiably toward a fellow employee and that employee's true employers...." *Sorrells,* 565 A.2d at 291. "[T]his privilege is vitiated when the supervisor acts with *malice* for the purpose of causing another employee's contract to be terminated." *Id.* (emphasis added).[8]

■ Plaintiff's bare allegations seem to suggest that defendant Nedimyer could have been maliciously motivated by racial animosity to procure the termination of Mr. Wiggins' contract with Philip Morris.[9] Defendant's

---

**6.** Plaintiff also fails to allege how, when, or where the obstruction of an established grievance procedure occurred. To the contrary, the complaint references numerous contacts with Philip Morris management during which plaintiff presented his concerns. Compl. ¶¶ 17–19.

Plaintiff called a Philip Morris employees' hotline to complain about the alleged racial discrimination. *Id.* ¶ 21. He declares that he met with Philip Morris supervisors Sharon Robinson and Greg Lahew "and told them about race-related harassment, denial of training and proper merit increases...." *Id.* ¶ 23. Plaintiff also telephoned the supervisor at the affirmative action desk to advise her of his complaints. *Id.* ¶ 24. In response to his complaints, Philip Morris officials suggested that plaintiff request a transfer. *Id.* ¶ 25. Plaintiff then requested a transfer.

Plaintiff has exercised his right to legal process as well, filing a grievance with the EEOC and numerous related lawsuits in this court.

Finally, there are no allegations suggesting that defendant Nedimyer interfered with Mr.

Wiggins' use of any established Philip Morris grievance procedure.

**7.** Plaintiff's allegations regarding violations of the Fair Credit Reporting Act are dealt with *infra* § V(F).

**8.** As the court stated in *Sorrells,* "[i]t serves no purpose to immunize supervisory employees for their tortious conduct when they are neither parties to the contract between other employees and their common employer...." *Id.*

**9.** Plaintiff's allegations are rather lean. He states:

Nedimyer and Pettinelli worked in concert during 1988, 1989 and 1990 to unlawfully violate the laws of the United States, each having exhibited racial animosity against ... Plaintiff.... As a consequence of such racial animosity, Nedimyer and Pettinelli worked in con-

motion to dismiss as to plaintiff's claim for tortious interference with contract is denied.[10]

## B. Defamation

In count two, Mr. Wiggins asserts that "defendants and each of them" "defame[d] plaintiff" as they engaged in a conspiracy to unlawfully terminate the plaintiff by marking down plaintiff's performance ratings and by disseminating false, criminal record information contained in an Equifax credit report.[11]

■■■■■ In a common-law defamation case, the court must determine "whether the challenged statement is 'capable of bearing a particular meaning' and whether 'that meaning is defamatory.'" *Fleming v. AT & T Info. Servs.*, 878 F.2d 1472, 1475 (D.C.Cir. 1989) (quoting *Tavoulareas v. Piro*, 817 F.2d 762, 779 (D.C.Cir.1987) (en banc), *cert. denied sub nom. Tavoulareas v. Washington Post Co.*, 484 U.S. 870, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987)); *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C.1990) (citations omitted). This statement "must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Howard University v. Best*, 484 A.2d 958, 989 (D.C.1984) (quoting *Johnson v. Johnson Publishing Co.*, 271 A.2d 696, 697 (D.C.1970)). A statement is considered to be defamatory "if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Moss*, 580 A.2d at 1023. The plaintiff must prove the defamatory na-

ture of the publication; however, "to accuse one of a crime is libel per se." *Weaver v. Grafio*, 595 A.2d 983, 988 (D.C.1991) (citing *Johnson*, 271 A.2d at 698).

■■■■■ All averments of defamation must be plead with particularity. *See Hoffman v. Hill and Knowlton, Inc.*, 777 F.Supp. 1003, 1005 (D.D.C.1991) (quoting *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 699 (8th Cir.1979)) ("[T]he use of *in hac verba* pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings."); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1309 (1990) ("In libel and slander suits, the time and place of the publication should be specifically stated in the complaint."). Conclusory allegations are insufficient to state a claim. *See Hoffman*, 777 F.Supp. at 1005; *Ridgewells Caterers v. Nelson*, 688 F.Supp. 760, 763 (D.D.C.1988). A plaintiff should plead the time, place, content, speaker, and listener of the alleged defamatory matter. *Id.; see also Wiggins v. Equifax, Inc.*, 848 F.Supp. 213 (D.D.C.1993).

■■■■ The content of the alleged defamatory matter contained in the consumer credit report is not in dispute. The report stated that Mr. Wiggins had a felony cocaine conviction. This accusation of conviction of a crime is libelous *per se*. However, the allegations with respect to the other elements *that must be plead with specificity* are woefully deficient. This court cannot determine from the

---

cert with other Phillip Morris [sic] employees to cause Plaintiff's performance appraisal to contain false defamatory information.... As a consequence of their racial animosity, Phillip Morris [sic], Nedimeyer [sic], and other Phillip Morris [sic] supervisors caused Plaintiff to be fired and because of their racial animosity did unlawfully terminate plaintiff.
Compl. ¶ 30. Plaintiff continues:
Between January through September 1988, Plaintiff's supervisors Hitchens, Petinnelli and Nedimeyer [sic] engaged in a series of racial attacks on Plaintiff comprised of threats, racial slurs, and other race based assaults and fear producing conduct.
*Id.* ¶ 56. If defendant Nedimyer procured the breach of Mr. Wiggins' employment contract because of his racial animus toward the plaintiff, then defendant Nedimyer can be held liable for tortious interference with plaintiff's contract.

Although sparse, plaintiff's allegations are sufficient to survive this motion to dismiss.

10. To the extent that plaintiff attempts to plead a tortious interference with contract claim against defendant Nedimyer with respect to plaintiff's employment with District Cablevision, defendant's motion to dismiss is denied. Defendant fails to allege any facts implicating a connection between any actions of defendant Nedimyer and Mr. Wiggins' termination from District Cablevision.

11. The second allegation refers to the dissemination of an erroneous consumer report issued by Equifax, Inc. For a more detailed explanation of the facts surrounding the dissemination of this report, see *Wiggins v. Equifax, Inc.*, 848 F.Supp. 213 (D.D.C.1993).

complaint if Mr. Nedimyer ever conveyed the contents of this consumer report to anyone at any time.

Allegations of defamation pertaining to the employment performance reports likewise fail; plaintiff makes no allegations as to the content of the defamatory statements placed in his personnel file. *See* Compl. ¶¶ 26, 30, 38.

■ Even if plaintiff's allegations were not wholly inadequate on their face, plaintiff's defamation claim would be barred for another reason, the District of Columbia's one-year statute of limitations. D.C.Code § 12–301(4).[12] Plaintiff alleges that between 1988 and 1990, defendants published the allegedly defamatory remarks. But this civil action was not filed until February 27, 1992. These claims are clearly outside the one-year bar. *See supra* note 3.

■ Given the heightened pleading standard in defamation actions and the applicable statute of limitations, any claim by plaintiff averring defamation is dismissed.[13]

12. The text of D.C.Code § 12–301(4) is as follows:

> Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:
>
> \* \* \* \* \* \*
>
> (4) for libel, slander, assault, mayhem, wounding, malicious prosecution, false arrest or false imprisonment—1 year. . . .
>
> D.C.Code Ann. § 12–301(4) (1989).

13. To the extent that plaintiff attempts to plead defamation as it pertains to the consumer credit report, the FCRA expressly limits the potential liability of the users of consumer reports by preempting state common-law privacy causes of action. Section 1681h(e) of the Act provides:

> Except as provided in sections 1681n and 1681o of this title, *no consumer may bring any action or proceeding in the nature of defamation,* invasion of privacy, or negligence *with respect to the reporting of information against* any consumer reporting agency, *any user of information,* or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, *except as to false information furnished with malice or willful intent to injure such consumer.*
>
> 15 U.S.C. § 1681h(e) (emphasis added). Thus, in a defamation action pursuant to proper disclo-

## C. Wire Fraud and Mail Fraud

■ The claims for federal wire and mail fraud must be dismissed because they are criminal offenses that have no corresponding private right of action. *See, e.g., Official Publications, Inc. v. Kable News Co.,* 884 F.2d 664, 667 (2d Cir.1989) ("18 U.S.C. §§ 1341 and 1343 (1982) . . . do not provide a private right of action."); *Ryan v. Ohio Edison Co.,* 611 F.2d 1170, 1179 (6th Cir.1979) (Section 1341); *Napper v. Anderson,* 500 F.2d 634, 636 (5th Cir.1974), *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975) (Section 1343).

## D. Title 1–2530 of the District of Columbia Code

Plaintiff provides no allegations whatsoever that support a finding of a violation of section 1–2530 by defendant Nedimyer.[14]

## E. Conspiracy under 42 U.S.C. § 1985(3)

■ In order to plead a viable cause of action under 42 U.S.C. § 1985(3),[15] a plain-

sure under the Act, "malice or willful intent to injure" must be alleged.

This Court concludes that plaintiff's complaint is devoid of allegations suggesting that defendant Nedimyer saw, used, or disseminated a consumer report, much less engaged in a conspiracy to willfully or maliciously injure Mr. Wiggins by disseminating a false report.

14. Section 1–2530 states:

> It shall be an unlawful practice, punishable by a fine of not more than $300, or imprisonment for not more than 10 days, or both, for any person to require the production of any arrest record or any copy, extract, or statement thereof, at the monetary expense of any individual to who such record may relate. Such "arrest records" shall contain only listings of convictions and forfeitures of collateral that have occurred within 10 years of the time at which such record is requested.
>
> D.C.Code Ann. § 1–2530 (1981).

15. 42 U.S.C. § 1985(3) states:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted author-

tiff must specifically allege (1) an act in furtherance of (2) a conspiracy (3) to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. *Great American Fed. Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). In this case, plaintiff fails to allege an underlying violation of federal law.

"Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Novotny*, 442 U.S. at 372, 99 S.Ct. at 2349. Thus, the question is whether violations of the federal laws asserted in this case equate to a deprivation of " 'the equal protection of the laws, or of equal privileges and immunities under the laws' within the meaning of § 1985(3)." *Id.* As one court has stated, "absent the violation of a substantive federal right that prohibits purely private conduct there can be no cause of action under 42 U.S.C. § 1985(3)." *Nieto v. United Auto Workers Local 598*, 672 F.Supp. 987, 992 (E.D.Mich.1987); *see also Holmes v. Finney*, 631 F.2d 150, 154 (10th Cir.1980); *Cohen v. Illinois Inst. of Tech.*, 524 F.2d 818, 828 (7th Cir.1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976).

The *Novotny* court concluded that Title VII cannot be the basis for a cause of action under section 1985(3). *Novotny*, 442 U.S. at 378, 99 S.Ct. at 2352 ("Unimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3).").

Likewise, this court has concluded that the Fair Credit Reporting Act cannot be the basis for a cause of action under section 1985(3). *See Wiggins v. Philip Morris*, —— F.Supp. ——, C.A. No. 92–493, § VI(E)(3) (D.D.C. May 13, 1994) (denying and granting in part defendant Philip Morris, Inc.'s motion to dismiss). Moreover, there are no allegations in the complaint which support Mr. Nedimyer's participation in a conspiracy to violate the Fair Credit Reporting Act. *See infra* § III(F).

Plaintiff also maintains that 42 U.S.C. § 1981 should be used as a basis for a cause of action under 1985(3). This court has recognized that federal statutory rights such as those protected under section 1981 may provide a substantive basis for a section 1985(3) claim. *See Alder v. Columbia Historical Soc.*, 690 F.Supp. 9, 15 (D.D.C.1988) (Bryant, J.); *Nieto*, 672 F.Supp. at 992; *Thompson v. International Assoc. of Machinists and Aerospace Workers*, 580 F.Supp. 662, 668 (D.D.C.1984) (Green, Joyce Hens, J.) ("[Section] 1981 is clearly a federal source of rights and unlike Title VII, '§ 1981 is not derived from a statutory scheme whose policies would be frustrated by the relitigation under another remedial statute.'" (quoting *Hudson v. Teamsters Local Union No. 957*, 536 F.Supp. 1138, 1147 (S.D.Ohio 1982)) (footnote omitted)). However, plaintiff fails to allege a substantive violation of section 1981 by Nedimyer. *See supra* § II. The complaint is also devoid of allegations of the requisite elements supporting a finding of a conspiracy to violate section 1981. Thus, plaintiff's claim under section 1985(3) must fail.

### F. The Fair Credit Reporting Act

██ Plaintiff also mentions the Fair Credit Reporting Act ("FCRA") throughout the complaint. To the extent that Mr. Wig-

---

ities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitle to vote, form giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C.A. § 1985(3) (1981).

gins attempts to allege that defendant Nedimyer violated any provision of the FCRA, the complaint is dismissed for failure to state a claim upon which relief can be granted.

■ The FCRA creates civil liability for consumer reporting agencies and users of consumer reports that fail to comply with its requirements.

This court concludes that there are no allegations within the complaint evidencing that defendant Nedimyer saw, used, or disseminated a consumer report.

### G. Civil Conspiracy

Plaintiff charges defendants with two alleged conspiracies. Plaintiff claims that defendants worked with Equifax, Inc. and Philip Morris in a conspiracy to tortiously interfere with plaintiff's contract and to violate the FCRA. Plaintiff's allegations as to defendants' acts in furtherance of the alleged conspiracies are numerous.

■ It is well established that "there is no recognized independent tort action for civil conspiracy in the District of Columbia," *Waldon v. Covington,* 415 A.2d 1070, 1074 n. 14 (D.C.1980); however, District of Columbia law "acknowledges the concept of civil conspiracy." *Halberstam v. Welch,* 705 F.2d 472, 479 (D.C.Cir.1983). "Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather it is a means for establishing vicarious liability for the underlying tort." *Id.*

■ Under District of Columbia law, the elements of a claim for civil conspiracy are "an agreement to do an unlawful act or a lawful act in an unlawful manner; an overt act in furtherance of the agreement by some-

one participating in it; and injury caused by the act." *Okusami v. Psychiatric Institute of Washington, Inc.,* 959 F.2d 1062, 1066 (D.C.Cir.1992) (citing *Halberstam,* 705 F.2d at 487).[16] Moreover, "[t]o establish liability, the plaintiff also must prove that an unlawful overt act produced an injury and damages." *Id.* An agreement may be inferred from the underlying facts. *Id.*[17]

#### 1. Conspiracy to Violate the FCRA.

To the extent that plaintiff attempts to include defendant Nedimyer in a group that deliberately and willfully conspired to violate the Fair Credit Reporting Act, the claim is dismissed. As previously stated, there are no allegations in the complaint which support a finding of defendant Nedimyer's participation in a conspiracy to violate the Fair Credit Reporting Act.

#### 2. Conspiracy to Tortiously Interfere with Employment Contract

■ Plaintiff also alleges that defendants conspired together to tortiously interfere with plaintiff's rights in his employment. Compl. ¶¶ 49, 73(1). There is an underlying tort under D.C. law for tortiously interfering with an employment contract. *See supra* § III(A). Again, plaintiff has alleged facts that support at least an inference of an agreement to participate in a scheme to tortiously interfere with Mr. Wiggins' employment contract.

Defendant's motion to dismiss with respect to count two as it relates to a conspiracy to tortiously interfere with plaintiff's employment is denied.

### IV. Dismissal of State Law Claims

The only causes of action surviving defendant Nedimyer's motion to dismiss are tor-

---

**16.** The exact language of *Halberstam* states the elements of a civil conspiracy as:
(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.
*Halberstam,* 705 F.2d at 477 (citation omitted).

**17.** "The element of agreement is a key distinguishing factor for a civil conspiracy action."

*Halberstam,* 705 F.2d at 477. Proof of a tacit understanding is sufficient to show agreement. As one court has stated: "[I]n most cases the court will have to infer a conspiracy from indirect evidence, it must initially look to see if the alleged joint tortfeasors are pursuing the same goal—although performing different functions— and are in contact with one another. The circumstances of each case dictate what other specific evidence may be useful in inferring agreement." *Id.* at 481.

tious interference with contract and conspiracy to tortiously interfere with plaintiff's employment, both state-law claims. No federal claims remain against defendant Nedimyer; the court *sua sponte* considers whether it should entertain these state-law causes of action.

The remaining state-law claims against defendant Nedimyer fall under what was formerly called "pendent party jurisdiction." Before the Judicial Improvements Act of 1990, federal courts frowned upon the use of pendent party jurisdiction to hear claims that lacked an independent basis for federal jurisdiction. Now, however, courts must employ "supplemental jurisdiction":

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C.A. § 1367(a) (1993). As David D. Siegel notes in the *Practice Commentary* accompanying the 1990 adoption of supplemental jurisdiction:

> The conferral [of supplemental jurisdiction] is in mandatory terms-the court "shall" have the supplemental jurisdiction-but subdivision (c), treated below, gives the court discretion to "decline to exercise" the supplemental jurisdiction in various circumstances.

A court may decline to exercise supplemental jurisdiction if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) *the district court has dismissed all claims over which it has original jurisdiction,* or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C.A. § 1367(c) (1993) (emphasis added).

■ In the present case, federal claims under Title VII remain against Philip Morris, Inc. Plaintiff's state conspiracy and tortious interference with contract claims against defendant Nedimyer arise from essentially the same conduct alleged in the discrimination count against Philip Morris and is "so related" to the other federal claims in the complaint that they "form part of the same case or controversy." Although this court has the discretion to decline jurisdiction, the court retains jurisdiction over the state-law counts enduring defendant Nedimyer's motion to dismiss.

## V. Conclusion

Plaintiff fails to make any allegations indicating an infringement of his right to make or enforce his contract. Even if Mr. Wiggins was discharged or suffered disparate treatment during his employment with Philip Morris because of racial harassment, his claim under section 1981 must be dismissed as a matter of law. Plaintiff's only cognizable allegations are for tortious interference with contract and conspiracy to tortiously interfere with plaintiff's employment; the remainder of plaintiff's complaint against defendant Nedimyer is dismissed.

A separate order shall issue this date.

## ORDER

This case comes before the court on defendant Nedimyer's motion to dismiss. It is hereby ORDERED that defendant Nedimyer's motion to dismiss the complaint for failure to state a claim upon which relief can be granted is GRANTED in part and DENIED in part in accordance with the accompanying memorandum opinion. Plaintiff's only surviving claims against defendant Nedimyer are his tortious interference with contract and conspiracy to tortiously interfere with contract claims. All other claims against defendant Nedimyer are hereby DISMISSED.

SO ORDERED.